[No. F043865. Fifth Dist. Dec. 1, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBIE LYNN HAWKINS, Defendant and Appellant.

## Counsel

Lora Fox Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean and Charles A. French, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**WISEMAN, J.**—Defendant Bobbie Lynn Hawkins was convicted of opening or maintaining a place for the purpose of unlawfully selling, giving away, or using crack cocaine and of misdemeanor child endangerment. She argues that the People failed to establish the corpus delicti for the opening-or-maintaining offense by evidence independent of her own extrajudicial statements. She also argues that the evidence was insufficient to support the conviction for that offense, and that the jury was not properly instructed on the elements of the opening-or-maintaining offense.

In this opinion, we discuss the showing required to establish the corpus delicti of the opening-or-maintaining offense and reject defendant's contention that it was not independently established here. We also hold that the standard jury instruction for this offense, CALJIC No. 12.08, sufficiently explains its elements. Finally, we conclude that the judgment was supported by sufficient evidence.

## FACTUAL AND PROCEDURAL HISTORIES

Sheriff's deputies raided defendant's house. They found defendant in the living room, a relative of defendant's named Sylvia Allen outside the front door, and a man named Michael Crosby in the basement. Defendant's four-year-old granddaughter was also in the house, as was her adult son and codefendant, Telon Hester.

On the counter in a bathroom attached to a bedroom that defendant shared with her roommate Venus Pittman, the deputies found two hand-rolled cigarettes with burned ends containing tobacco laced with crack cocaine. In the closet in this bedroom, the deputies found a Tupperware container. There were four small bags in the container made from pieces of sandwich baggies, each containing a usable quantity of crack cocaine. There was also a razor blade in the container. An open box of sandwich baggies was in the closet with the Tupperware container, as was a telephone bill bearing defendant's name and the house's address. Two used glass pipes, designed for smoking crack cocaine, were found in the basement.

Allen, Crosby, and Hester were under the influence of narcotics at the time of the raid. Hester possessed $178 in one-, five-, ten- and twenty-dollar bills. The four year old lived in the house; however, Hester did not.

Deputies interviewed defendant. They claimed she said the house, bedroom, and closet were hers, and that "the narcotics were there for everyone in the house to use." Defendant also reportedly said her son and roommate were "selling out of the residence," that her son "receive[d] lots of phone calls" and "ha[d] a lot of people coming over, in and out of the house," and that she was aware of these facts.

The district attorney filed an information against defendant and Hester. It charged two counts against defendant: 1) opening or maintaining a place for the purpose of unlawfully selling, giving away, or using a controlled substance (Health & Saf. Code, § 11366); and 2) misdemeanor endangerment of the granddaughter (Pen. Code, § 273a, subd. (b)).

At trial, deputies testified to several opinions: crack cocaine is usually sold in small baggies like those found in defendant's closet; razor blades are

usually used to divide crack into small portions for sale; the crack found in defendant's closet had been prepared for sale; the crack-laced cigarettes found in the bathroom were for personal use; frequent phone calls are associated with drug selling; and crack is often sold in $10 and $20 portions.

Defendant testified that she did not know how the drugs got into the house and was shocked when the deputies found them. She implied that her roommate, Pittman, could have been responsible. She said she did not recall telling the deputies that the drugs were for everyone in the house or that her son was selling drugs from the house. She admitted that she said her son received many telephone calls, but said her other children did also. Defendant denied that she opened or used the house to sell or use drugs. Further, she testified that she was not sure what crack is.

The prosecution introduced evidence that, in 1994, defendant pleaded no contest to charges of possession of crack cocaine for sale and maintaining a residence for the purpose of storing or selling crack cocaine. Crack and razor blades were found in defendant's home on that occasion also. The jury was instructed that this evidence was relevant to defendant's credibility and to whether she knew the substance in her house was crack.

The jury found defendant guilty as charged. The court selected the middle term of two years for the opening-or-maintaining conviction and a concurrent term of six months for child endangerment.

## DISCUSSION

### I. Sufficient independent evidence of corpus delicti

Defendant argues that the prosecution did not establish the corpus delicti of the opening-or-maintaining offense by evidence independent of her out-of-court statements. She contends that other than her extrajudicial statements to the deputies, there was insufficient evidence of one element of this offense: the purpose of selling, using, or giving away a controlled substance on a continuous or repetitive basis. We disagree.

The corpus delicti rule was set forth by the California Supreme Court in (among many other cases) *People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 [119 Cal.Rptr.2d 903, 46 P.3d 372]: "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively*

upon the extrajudicial statements, confessions, or admissions of the defendant . . . . [¶] . . . This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened."

■ The standard of proof for establishment of the corpus delicti independent of the defendant's out-of-court statements is low: "The amount of independent proof of a crime required for this purpose is quite small; we have described this quantum of evidence as 'slight' [citation] or 'minimal' [citation]. The People need make only a prima facie showing ' "permitting the reasonable inference that a crime was committed." ' [Citations.] The inference need not be 'the only, or even the most compelling, one . . . [but need only be] a *reasonable* one . . . .' [Citation.]" (*People v. Jones* (1998) 17 Cal.4th 279, 301–302 [70 Cal.Rptr.2d 793, 949 P.2d 890].)

■ The elements of the opening-or-maintaining offense are that the defendant (a) opened or maintained a place (b) with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance. (*People v. Horn* (1960) 187 Cal.App.2d 68, 73 [9 Cal.Rptr. 578]; *People v. Holland* (1958) 158 Cal.App.2d 583, 588–589 [322 P.2d 983].)

■ The elements of the corpus delicti are not in all instances the same as the elements of the offense, however. It is sometimes said that the corpus delicti consists of all the elements of the crime. (See, e.g., Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 7th ed. 2004) § 30.22, p. 790.) But this is not always the case. It is well established that the corpus delicti does not include the fact that the defendant was the perpetrator, although this obviously must be proved to obtain a conviction. The prosecution need produce evidence only that *someone* committed the crime. (*People v. Jones, supra,* 17 Cal.4th at pp. 319–320 (conc. opn. of Mosk, J.); *People v. Lopez* (1967) 254 Cal.App.2d 185, 190 [62 Cal.Rptr. 47].) In homicide cases, the corpus delicti does not include the degree of the offense (*People v. Martinez* (1994) 26 Cal.App.4th 1098, 1104 [31 Cal.Rptr.2d 869]), although that also is part of the prosecution's burden of proving the defendant guilty.

On the other hand, it is sometimes said that the intent, purpose, or mental state of the perpetrator is generally not an element of the corpus delicti. (See, e.g., 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 46, p. 251.) This is also incorrect. For a variety of crimes, it is often held that the corpus delicti includes evidence of the defendant's mental state. (See, e.g., *People v. Lopez, supra,* 254 Cal.App.2d at p. 190 [corpus

delicti of selling narcotics included knowledge that the substance sold was a narcotic]; *People v. Lawrence* (1956) 141 Cal.App.2d 630, 633 [297 P.2d 144] [corpus delicti of child abuse shown by evidence that corporal injury was inflicted on child deliberately and intentionally].)

The question of what elements of a crime are included in the corpus delicti is important here because defendant's argument is that one element, the perpetrator's purpose, was not shown by independent evidence. A threshold issue thus arises of whether this element of the crime is also an element of the corpus delicti. Although some aspects of the mental-state elements of some crimes are not included in the corpus delicti, we know of no authority stating that the purpose element of the offense at issue here is in this category. Moreover, the holding of *Lopez, supra*, 254 Cal.App.2d at page 190, that knowledge of the nature of the substance sold is an element of the corpus delicti for selling a controlled substance, presents a persuasive analogy. Further, a purpose of continuous illegal conduct is the essence of this crime. Its only other element is the otherwise innocent conduct of opening or maintaining a place. We conclude that the perpetrator's purpose of continuously or repeatedly using a place for selling, giving away, or using a controlled substance is part of the corpus delicti of a violation of Health and Safety Code section 11366.

With this conclusion in mind, and in light of the low pertinent evidentiary standard, we hold that the prosecution established the corpus delicti of the offense by sufficient evidence independent of defendant's extrajudicial statements. The jury could reasonably infer that someone had a purpose of using the house continuously or repeatedly for selling, giving away, or using controlled substances. Three people were found in the house under the influence of narcotics, indicating present or immediate past use. In another area of the house, used crack pipes showed past use. Crack-laced cigarettes that had been partly smoked and then saved indicated both past use and an intent to use in the future. The supply of four packaged doses of crack, stored in Tupperware, indicated an intent to use or sell in the future. In addition, the prosecution's evidence impeaching defendant's credibility allowed the jury to make a reasonable inference that defendant testified falsely when she said she did not open or use the house for the prohibited purposes.

*People v. Jones, supra*, 17 Cal.4th 279, supports our conclusion. In that case, the defendant was convicted of murdering the victim after kidnapping, robbing, raping, and orally copulating her. (*Id.* at p. 291.) Evidence of each crime independent of the defendant's extrajudicial statements was plentiful, except that there was no evidence of oral copulation. Defendant

moved to set aside the information, arguing that the prosecution presented no evidence at the preliminary hearing to support the oral copulation charge, other than the defendant's admission. The trial court denied the motion. (*Id.* at pp. 299–301.) The Supreme Court affirmed. "Keeping in mind the low threshold of proof required to satisfy the corpus delicti rule," the court held that the "circumstantial evidence of multiple forcible sexual acts sufficiently establishes the requisite prima facie showing" of the corpus delicti, even though none of that evidence was evidence of oral copulation. Rejecting the defendant's argument that "the lack of evidence of the *specific* loss or harm to this victim is fatal to the establishment of the corpus delicti," the court declared that "[t]he law's requirements . . . are not so strict." (*Id.* at p. 302.) "[W]e have never," the court went on, "interpreted the corpus delicti rule so strictly that independent evidence of every physical act constituting an element of an offense is necessary. Instead, there need only be independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved." (*Id.* at p. 303.)

If the independent evidence in *Jones* sufficed to support the corpus delicti for oral copulation, then the corpus delicti for the opening-or-maintaining offense was amply supported here.

## II. *Sufficient evidence to support the conviction*

Defendant argues that even if the corpus delicti rule were satisfied, there was insufficient evidence to support the conviction. This contention is unconvincing.

■ "When an appellant asserts there is insufficient evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298 [69 Cal.Rptr.2d 148].)

As defendant points out, evidence of a single instance of drug use or sales at the house, without circumstances supporting a reasonable inference that the house was used for the prohibited purposes continuously or repetitively, does not suffice to sustain a conviction of the opening-or-maintaining offense. (*People v. Shoals* (1992) 8 Cal.App.4th 475, 491–492 [10 Cal.Rptr.2d 296]; *People v. Horn, supra*, 187 Cal.App.2d at pp. 73–74; *People v. Holland, supra*, 158 Cal.App.2d at pp. 588–589.) Defendant argues that the evidence

showed no more than use on a single occasion. As noted in the discussion above, however, there was evidence from which the jury could reasonably infer ongoing use. Even if the quantum of that evidence standing alone was too small to support the conviction, when combined with defendant's statements to the deputies, it was sufficient. The assertions that the drugs were "for everyone in the house to use," that defendant's son was "selling out of the residence" with defendant's knowledge, and that she knew her son was receiving numerous visitors and telephone calls even though he did not live there, sufficiently showed a purpose of ongoing use or sale to support the verdict when added to the other evidence described earlier.

III. *Jury instructions*

Defendant argues that the court's jury instruction defining the opening-or-maintaining offense was inadequate. We hold that the jury was instructed properly.

The court instructed the jury in accordance with CALJIC No. 12.08:

"The defendant is accused in Count 1 of having committed a violation of Section 11366 of the Health and Safety Code, a crime. Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance or narcotic drug, such as cocaine, is guilty of Health and Safety Code Section 11366, a crime.

"In order to prove this crime, each of the following elements must be proved:

"(1) A person opened or maintained any place; and

"(2) That person did so with the specific intent to sell, give away, or use rock cocaine on a repetitive and continuing basis."

In attacking this instruction, defendant relies on *People v. Shoals, supra,* 8 Cal.App.4th 475. There, the court considered a jury instruction essentially the same as the one given here, except that it did not require a finding of a specific intent to sell, give away, or use drugs on a repetitive or continuing basis. (*Id.* at p. 489.) The court held that this specific intent was an element of the crime which the words "opening" and "maintaining" standing alone failed to communicate to the jury. Therefore, the jury instructions should have defined these terms to make clear that a purpose of engaging in ongoing conduct must be found to convict. (*Id.* at p. 490.)

Defendant argues that under the reasoning of *Shoals*, CALJIC No. 12.08 is inadequate because it does not include definitions of "opening" and "maintaining." This argument is without merit. CALJIC No. 12.08 (the Comment to which cites *Shoals*) informs the jury that it must find a specific intent to sell, give away, or use on a repetitive and continuing basis. This tells the jury what specific intent it must find. It does so at least as well as—and probably better than—express definitions of "opening" and "maintaining" would do.

### DISPOSITION

The judgment is affirmed.

Vartabedian, Acting P. J., and Harris, J., concurred.