**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PHILANDER SALVIEJO-FERNANDEZ,
aka Philander Salviejo,
                        *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,
                        *Respondent.*

No. 04-76383

Agency No.
A19-193-784

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 4, 2006*
Pasadena, California

Filed July 31, 2006

Before: Harry Pregerson and Edward Leavy, Circuit Judges,
and Ralph R. Beistline,** District Judge.

Opinion by Judge Leavy;
Dissent by Judge Pregerson

_____

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Ralph R. Beistline, United States District Judge for
the District of Alaska, sitting by designation.

---

**COUNSEL**

Philander F. Salviejo, San Ysidro, California, for the petitioner, pro se.

Jennifer L. Lightbody, U.S. Department of Justice, Washington, DC, for the respondent.

---

**OPINION**

LEAVY, Circuit Judge:

Philander Salviejo-Fernandez (Salviejo), a native and citizen of the Philippines, petitions pro se for review of the Board

of Immigration Appeals' (BIA) dismissal of his appeal of the immigration judge's (IJ) decision finding him ineligible for cancellation of removal. The BIA held that Salviejo's conviction under Cal. Health and Safety Code § 11366 for opening or maintaining a place for the purpose of unlawfully selling a controlled substance was an aggravated felony barring the relief of cancellation of removal under 8 U.S.C. § 1229b(a)(3). We have jurisdiction under 8 U.S.C. § 1252 and, after de novo review, we deny the petition.

## FACTS AND PRIOR PROCEEDINGS

Salviejo was admitted to the United States as a legal permanent resident on August 20, 1969. On March 24, 2001, he was convicted of maintaining a place for selling or using controlled substances in violation of Cal. Health & Safety Code § 11366, and, on March 7, 2002, he pled guilty to possession of a controlled substance in violation of Cal. Health & Safety Code § 11377.

On April 13, 2003, the Department of Homeland Security (DHS) issued a Notice to Appear (NTA), charging Salviejo with being removable under 8 U.S.C. § 1227(a)(2) based on his § 11377 conviction. The NTA alleged that this conviction constituted an aggravated felony under 8 U.S.C. § 1227(a)(2) (A)(iii) and a conviction relating to a controlled substance under 8 U.S.C. § 1227(a)(2)(B)(i).

Salviejo applied for cancellation of removal. A hearing was held on the charge of removeability and the application for cancellation of removal. At the hearing, the government sought to introduce Exhibit 4, which was an abstract of judgment showing both the § 11377 and the § 11366 convictions. Salviejo objected on the grounds that the § 11366 conviction was not mentioned in the NTA. The IJ stated, "Yes, that's not relevant to anything here today."

In his oral decision the IJ noted,

Counsel pointed out that the 11366 was not being charged or dealt with in the NTA, and he didn't want it to have an adverse affect on his client for purposes of relief, because he was asserting it was not an aggravated felony.

The Court held that the Court was not taking the 11366 conviction set forth in Exhibit 4 into consideration for any purpose as it related to the allegations charged against the respondent in [the NTA], or on the grounds of deportability as it related to those set forth in [the NTA].

The Court pointed out the way the Court bifurcates the hearings, that if the Service is going to assert that it's an aggravated felony, that would bar relief depending on how the Court rules whether this conviction for 11377 . . . is an aggravated felony or not. We would deal with it at that time.

The IJ then found that Salviejo was (1) removable because the § 11377 conviction was both an aggravated felony and a controlled substance conviction[1] and (2) ineligible for cancellation of removal because it was an aggravated felony conviction. Salviejo appealed the IJ's decision to the BIA. The BIA sustained the appeal and reversed the IJ, concluding that Salviejo's conviction under § 11377 was not an aggravated felony because it was not an "illicit trafficking" offense within the meaning of the 8 U.S.C. § 1101(a)(43)(B) and remanded for the IJ to consider whether Salviejo was eligible for cancellation of removal.

---

[1]The definition of aggravated felony under 8 U.S.C. § 1101(a)(43)(B) does not include all controlled substance convictions covered by 8 U.S.C. § 1227(a)(2)(B), but only includes "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 942(c) of Title 18." 8 U.S.C. § 1101(a)(43)(B).

At the second hearing, DHS asserted and the IJ agreed that Salviejo's § 11366 conviction constituted an aggravated felony barring cancellation of removal. Salviejo appealed to the BIA. The BIA held that the § 11366 conviction was analogous to a federal conviction under 21 U.S.C. § 856 and, therefore, an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). Therefore, the BIA dismissed the appeal.

Salviejo timely petitioned for review.

## JURISDICTION

We have jurisdiction to review the petition under 8 U.S.C. § 1252 as amended by § 106(a) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005). *See Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005). While we have no jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed a criminal offense," including a conviction relating to a controlled substance, 8 U.S.C. §§ 1252(a)(2)(C) and 1227(a)(2)(B), we are not barred from hearing the constitutional claims or questions of law raised in Salviejo's petition. 8 U.S.C. § 1252(a)(2)(D).

## ANALYSIS

A. *Due Process*

**[1]** Salviejo contends that his due process rights were violated when the BIA found him ineligible for cancellation of removal based on his § 11366 conviction because it was not alleged in the NTA. We review due process claims de novo. *See Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002). The NTA served on an alien in removal proceedings must contain "the nature of the proceedings against the alien," the "legal authority under which the proceedings are conducted," the "acts or conduct alleged to be in violation of the law," and the "charges against the alien and the statutory provisions

alleged to have been violated." 8 U.S.C. § 1229(a)(1); *see also* 8 C.F.R. § 1003.15(b) & (c). At anytime during the removal proceedings "additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by the [INS] in writing" and must be served on the alien. 8 C.F.R. § 1240.10. Although the government bears the burden of proof with respect to any conviction that supports a charge of removability, 8 U.S.C. § 1229a(c)(3), an alien who applies for cancellation of removal bears the burden of demonstrating that he is eligible for such relief. 8 U.S.C. § 1229a(4)(A)(I); 8 C.F.R. § 1240.8(d). "If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d) (2006).

**[2]** Both the Second and Fifth Circuits have held that due process does not require that the NTA include a conviction that is not a ground of removability but is a ground for denial of relief from removal. In *Brown v. Ashcroft*, 360 F.3d 346 (2d Cir. 2004), the Second Circuit rejected petitioner's contention that the Immigration and Naturalization Service (INS) had violated his due process rights when it relied on a conviction that was not included in the NTA to deny a waiver of inadmissability under former INA § 212(c), previously codified at 8 U.S.C. § 1182(c):

> The . . . conviction was not presented as a substantive ground supporting the INS's contention that Brown could be removed. Rather, it was presented as a response to Brown's defense to removability — the contention that he was eligible for section 212(c) relief. On this defense, Brown had the burden of proof, and had to at least have been aware of the possibility that the INS would try to rely on his conviction to bar him from relief.

*Id.* at 351 (citations and footnotes omitted); *see also Aalund v. Marshall*, 461 F.2d 710 (5th Cir. 1972).

**[3]** We join the Second and Fifth Circuits and hold that due process does not require inclusion of charges in the NTA that are not grounds for removal but are grounds for denial of relief from removal. Thus, we reject Salviejo's due process claim.

B. *Aggravated Felony*

**[4]** Salviejo asserts that the BIA erred when it held that his conviction under Cal. Health & Safety Code § 11366 was analogous to a federal conviction under the Controlled Substances Act, 21 U.S.C. § 856(a) and, therefore, an aggravated felony. This court reviews de novo the legal question whether a particular conviction constitutes an aggravated felony. *Li v. Ashcroft*, 389 F.3d 892, 895 (9th Cir. 2004). A state drug offense is an "aggravated felony" for immigration purposes only if it would be punishable as a felony under federal drug laws, or if it contains a trafficking element. *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir. 2004). The parties do not dispute that a conviction under 21 U.S.C. § 856(a) constitutes a felony conviction. The penalty for violation of this provision is a sentence of not more than 20 years, 21 U.S.C. § 856(b), which makes it a felony under federal law. *United States v. Ballesteros-Ruiz*, 319 F.3d 1101, 1103 (9th Cir. 2003) (offense classified as a felony for purposes of the Controlled Substances Act only if it is "punishable by more than one year's imprisonment under applicable state or federal law."). Their dispute concerns whether Salviejo's § 11366 conviction is analogous to a conviction under 21 U.S.C. § 856(a).

**[5]** We use the two-step test set forth in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a conviction is an "aggravated felony" under the INA. *See Penuliar v. Gonzales*, 435 F.3d 961, 966 (9th Cir. 2006). First, we "look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43)." *Id.* (citation and quotation

omitted). "Under this categorical approach, an offense qualifies as an aggravated felony if and only if the full range of conduct covered by the [statute of conviction] falls within the meaning of that term." *Id.* (citations and quotations omitted). If the statute of conviction reaches both conduct that would constitute an aggravated felony and conduct that would not, we follow a "modified categorical approach." *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc).

The statute of conviction, Cal. Health & Safety Code § 11366, provides:

> Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance which is (1) specified in subdivision (b), (c), or (e), or paragraph (1) of subdivisions (1) of Section 11054, specified in paragraph (13), (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b), (c), paragraph (1) or (2) of subdivision (d), or paragraph (3) of subdivision (c) of Section 11055, or (2) which is a narcotic drug classified in Schedule III, IV, or V, shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison.

**[6]** Under the federal Controlled Substances Act, it is unlawful to "knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a). A conviction for violation of § 856(a) requires proof that the defendant (1) knowingly (2) opened, rented, used or maintained a place (3) for the purpose of manufacturing, distributing, or using a controlled substance. *See United States v. Basinger*, 60 F.3d 1400, 1404 (9th Cir. 1995).

**[7]** Salviejo asserts that § 11366 does not contain the "knowingly" element found in the federal statute. "The elements of the [§ 11366] offense are that the defendant (a) opened or maintained a place (b) with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance." *People v. Hawkins*, 21 Cal. Rptr. 3d 500, 503 (Cal. Ct. App. 2004) (citations omitted). To act "with a purpose" is to "consciously desire" the result. *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000). In *Gracidas-Ulibarry*, we concluded that "purpose" was the highest of four levels of culpable states of mind: purpose, knowledge, recklessness, and negligence. "In general, 'purpose' corresponds to the concept of specific intent, while 'knowingly' corresponds to general intent." *Id.* (citing *United States v. Bailey*, 444 U.S. 394, 405 (1980); *Model Penal Code & Commentaries*, § 2.02 cmt. at 233-34.) Thus, there is no such thing as an unknowing purpose.

**[8]** Because a conviction under § 11366 requires that the defendant act "with the purpose," the full range of conduct covered by § 11366 falls within the meaning of 21 U.S.C. § 856(a). Under the categorical approach, the BIA did not err when it concluded that Salviejo's § 11366 conviction constituted an aggravated felony.

PETITION FOR REVIEW DENIED.

---

PREGERSON, Circuit Judge, dissenting:

This case presents two important questions of first impression. First, the majority holds that a Notice to Appear need not charge all relevant criminal conduct, despite a DHS regulation to the contrary. *See* Maj. Op. at 8510. Second, it also concludes after only sparse analysis that California Health and Safety Code section 11366, that prohibits opening or maintaining a place for unlawfully selling or using a controlled

substance, is categorically an aggravated felony. *See* Maj. Op. at 8512-13. Because I disagree with the majority's legal analysis and its harsh conclusion that removal is appropriate for Philander Salviejo, a long-term legal permanent resident, I respectfully dissent.

Salviejo was born in the Philippines in 1951. At the age of 18, he lawfully immigrated to the United States; Salviejo was admitted as a lawful permanent resident on August 20, 1969. Salviejo married in 1973, and he and his wife have two United States citizen children who are now thirty-two and twenty-seven years old. After thirty-seven years in this country, Salviejo is threatened with removal from the country that he has called home for more than two-thirds of his life.[1]

A.   *Due Process*

"The . . . Notice to Appear [for a removal proceeding] *must* also include . . . (3) The acts or conduct alleged to be in violation of law." 8 C.F.R. § 1003.15(b), (b)(3) (emphasis added). Interpreting this language, the majority holds that "due process does not require inclusion of charges in the N[otice] [to] A[ppear] that are not grounds for removal but are grounds for denial of relief from removal." Maj. Op. at 8511. The majority dismisses the unambiguous language of the regulation out of hand and reaches the conclusion that some allegedly unlawful conduct need not be charged in the Notice to Appear.

It is true that the Second and Fifth Circuits have come to the same counterintuitive conclusion. Although our sister circuits held that "notice was neither statutorily nor constitutionally mandated," both courts conceded that "it would have been better for the INS to have given . . . advance notice in

---

[1]I also observe that Salviejo proceeds before us without counsel. Because Salviejo is a *pro se* petitioner, we should take the utmost care that he gets a fair shake on appeal.

writing." *Brown v. Ashcroft*, 360 F.3d 346, 353 (2d Cir. 2004); *see also Aalund v. Marshall*, 461 F.2d 710, 712-13 (5th Cir. 1972). In disregarding what it had identified as the "better" approach, the Second Circuit reasoned that charging all unlawful conduct in the Notice to Appear "would prove unmanageable for the government, as the variety of defenses and strategies in removal proceedings is innumerable." *Brown*, 360 F.3d at 351 (internal quotations omitted).

I am not persuaded by the Second Circuit's reasoning — or the majority's — that the government should not have to charge all illegal conduct in the Notice to Appear. Far from being "unmanageable," the government would simply need to put the alien on notice of the criminal convictions against which the alien would have to defend. It would not be "virtually impossible" to foresee every defense to removal, *Brown*, 360 F.3d at 351; the government would simply have to charge "[t]he acts or conduct alleged to be in violation of law." 8 C.F.R. § 1003.15(b)(3).

It is axiomatic that due process require fair notice of charges to enable the defendant to prepare a defense. *See Zitto v. Crabtree*, 185 F.3d 930, 931-32 (9th Cir. 1999) (parolees); *Aponte v. Gomez*, 993 F.2d 705, 708 (9th Cir. 1993) (criminal defendants); *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992) (defendants in administrative action). This makes sense: if an individual is going to be deprived of some right, due process requires that the individual have an adequate opportunity to mount a defense.

Here, the majority draws a distinction between unlawful conduct that triggers removal and unlawful conduct that bars affirmative relief from removal. *See* Maj. Op. at 8510. The artificial distinction results is precisely the type of surprise charges against which due process protects. In the instant case, Salviejo was charged with removability for violating California Health and Safety Code section 11377. After the immigration judge's removal order was reversed by the Board

of Immigration Appeals, the government surprised Salviejo on remand by claiming for the first time that he was ineligible for cancellation of removal because of his conviction under section 11366 that had not been charged in Salviejo's Notice to Appear. It is understandable that Salviejo was ill-equipped to mount a defense to this unexpected new charge. Whether the uncharged misconduct results in a finding of removability or a bar from cancellation of removal, the outcome is the same: Salviejo was not permitted adequately to defend himself.

The regulation states that the Notice to Appear must include the "acts or conduct alleged to be in violation of the law." 8 C.F.R. § 1003.15(b)(3). I cannot join the majority in adopting a rule in this circuit that plainly misreads the unambiguous language of that regulation. Accordingly, I respectfully dissent.

## B.   *Aggravated Felony*

The majority holds that Salviejo is barred from cancellation of removal because his state law drug conviction is an aggravated felony for immigration purposes because it is punishable as a felony under federal drug laws. *See* Maj. Op. at 8513. I do not take issue with the majority's statement of the law and its understanding of the *Taylor* approach. But I disagree with the majority's hasty conclusion that the full range of conduct covered in California Health and Safety Code section 11366 falls within the meaning of 21 U.S.C. § 856(a).

The two statutes are similar. Each imposes liability on a person who (1) opens or maintains any place (2) for the purpose of (3) selling, giving away, or using (4) any controlled substance. *See* Cal. Health & Safety § 11366; 8 U.S.C. § 856(a). The majority recognizes that the only apparent difference between the two is that the federal statute requires that a person *knowingly* open or maintain any place, while the California statute codifies no mens rea for that element. *See* Maj.

Op. at 8512-13. The majority concludes that the difference is immaterial because "there is no such thing as an unknowing purpose." Maj. Op. at 8513.

The majority's error is in its failure to consider the importance of the different mentes reae that Congress deliberately applied to the different elements of 21 U.S.C. § 856(a). *See* 1 Wayne R. LaFave, Substantive Criminal Law § 5.1(d) at 338 (2d ed. 2003) (noting "that the mental ingredients of a particular crime may differ with regard to different elements of the crime").

Under the federal offense, an individual must *knowingly* open or maintain the place, for the *purpose* of selling, giving away, or using a controlled substance. *See* 8 U.S.C. § 856(a). The federal statute deliberately assigns a different mens rea to each element. This is because a building owner can be convicted under this statute if the owner knowingly makes a place available to someone else who has the purpose of using or selling drugs. *See United States v. Chen*, 913 F.2d 183, 191 (5th Cir. 1990) (noting that section 856(a) "does not require the person who makes the place available to others for drug activity to possess the purpose of engaging in illegal activity; the purpose in issue is that of the person renting or otherwise using the place"). That is, a defendant owner may be liable even though the owner exhibited no purposeful conduct. Indeed, courts have focused on the importance of the "knowledge" mens rea as to the first element to preclude a deliberate ignorance theory of liability. *See United States v. Soto-Silva*, 129 F.3d 340, 344-45 (5th Cir. 1997), *cert. denied*, 523 U.S. 1130 (1998).

In contrast, the California offense is considerably broader. If a renter were to have the purpose of using a controlled substance, satisfying the second element of the offense, any owner who opened or maintained the place could be liable under section 11366.[2] Whereas under the federal law an

---

[2]Although section 11366.5 of the California Health and Safety Code separately creates liability for owners who *knowingly* make space avail-

owner would only be liable if the owner *knew* of the crime, under the California law an owner would be liable even if the owner were reckless or negligent as to the existence of criminal activity.

Contrary to the majority's conclusion, the difference between the two crimes is significant.[3] The full range of conduct covered by the California statute — including negligent or reckless provision of a place for drug use — is not covered by the federal statute. Accordingly, I would hold that a violation of California Health and Safety Code section 11366 is not categorically an aggravated felony. Because the record is incomplete as to whether Salviejo's conviction is an aggravated felony under the modified categorical approach, I would remand this case for further development of the factual record.

For the foregoing reasons, I respectfully dissent.

---

able for the unlawful manufacture, storage, or distribution of any controlled substance, that section does not include liability for an owner who makes space available for drug *use*. Instead, it is section 11366 — the section that lacks the knowledge element — that makes an owner liable "merely by providing a place for drug abusers to gather and share their experience." *People v. Vera*, 82 Cal. Rptr. 2d 128, 129 (Cal. Ct. App. 1999) (quoting *People v. Green*, 246 Cal. Rptr. 164, 167 (Cal. Ct. App. 1988)).

[3]Indeed, we should not lightly conclude, as the majority does, that the legislature's inclusion of an additional element to a crime is mere surplusage. "[W]e strive to avoid constructions that render words meaningless." *United States v. LSL Biotechnologies*, 379 F.3d 672, 679 (9th Cir. 2004) (citation omitted).