Filed 8/15/14  P. v. Meyers CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MIKA L. MEYERS,<br><br>　　　Defendant and Appellant. | A135489<br><br>(Humboldt County<br>　Super. Ct. No. CR1101071)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed on August 4, 2014, be modified as follows:

At page six, replace the first full paragraph with the following paragraph:

　　　Contrary to defendant's contention, his admission (that he was not profiteering), supported by Fisher's statements to the police that he had purchased heroin from defendant in the past and on the day of the search he was at the residence to buy heroin from defendant, and together with the physical evidence found throughout the residence, was sufficient circumstantial evidence from which the jury could reasonably infer that defendant "maintained this residence" for either selling, giving, or "using and sharing [heroin] with other people." (*Green, supra*, 200 Cal.App.3d at p. 544.)

The petition for rehearing is denied. There is no change in the judgment.

Dated: 　　　　　　　　　　　　　　_____ P.J.

Filed 8/04/14  P. v. Meyers CA1/3 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIKA L. MEYERS,<br><br>        Defendant and Appellant. | A135489<br><br>(Humboldt County<br> Super. Ct. No. CR1101071) |

After a jury trial defendant Mika L. Meyers was convicted of the felony offense of possessing heroin (Health & Saf. Code, § 11350, subd. (a)[1]), as a lesser included offense of possessing heroin for sale (§ 11351), and maintaining a place for the purpose of selling, giving away, or using a controlled substance (heroin) as a felony offense (§ 11366). In a bifurcated court proceeding, defendant admitted to allegations that he had four prior felony convictions (Pen. Code, § 1203, subd. (e)(4)), had served two separate prior prison terms (Pen. Code, § 667.5, subd. (b)), and had two prior strikes within the meaning of the Three Strikes law (Pen. Code, § 667, subds. (b) – (i)). After denying a motion to strike either or both prior strikes (Pen. Code, § 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497), the court sentenced defendant to state prison for an aggregate term of 27 years to life, consisting of concurrent terms of 25 years to life for each drug offense and consecutive terms of one year for each of the two prior prison terms.

---

[1] All further unspecified statutory references are to the Health and Safety Code.

1

On appeal defendant challenges his conviction for maintenance of a place for the purpose of selling, giving away, or using a controlled substance (heroin) on the grounds of insufficiency of evidence and an erroneous jury instruction. He also contends his sentence should be set aside and the matter remanded for a new sentencing hearing pursuant to Penal Code sections 667 and 1170.12, as amended by Proposition 36, the Three Strikes Reform Act of 2012. We affirm.

**FACTS**

On March 9, 2011, defendant and his girlfriend Rubi Armas were living in a residence in Eureka. Detective Patrick Bishop, Detective Neil Hubbard, Sergeant Steven Watson, Reserve Detective Ron Prose, and Captain Murl Harpham of the Eureka Police Department went to the residence to conduct a parole search. Some of the officers went to the rear of the residence, while others knocked on the front door, yelling, "Police Department. Parole Search."

The officers at the rear saw defendant peek out a window and ordered him to leave the residence. As defendant left the residence, Detective Hubbard attempted to handcuff defendant. Defendant fidgeted with his waistband before allowing himself to be handcuffed.. After defendant was handcuffed, Hubbard moved him away from the back door as other officers detained and handcuffed Robert Fisher and Christopher Benoit who were found inside the residence. After the detention of the three men in the backyard, Detective Bishop found a bag containing eight bindles of heroin (seven weighed .2 grams; one weighed .3 grams) wrapped in yellow cellophane on the threshold of the back door where Hubbard had been standing while he handcuffed defendant. The yellow cellophane was wrapped around a white plastic bag with pieces torn off; the torn plastic pieces were used to package controlled substances by sealing the drugs inside the plastic.

During a search of the living room, the officers found heroin residue and another bindle of heroin (.6 gram gross field weight) wrapped in yellow cellophane inside a recliner chair and several suboxone pills (commonly used to help heroin addicts break their addiction) inside a cabinet. Against a living room wall on a hanger system for coats near the front door, a hypodermic needle was found inside a green rain jacket and another

2

bindle of heroin (.2 gram gross field weight) wrapped in red cellophane was found inside a blue flannel jacket. During a search of the kitchen, the officers found heroin residue, loose drug packaging material (pieces of yellow cellophane plastic similar to the cellophane used to package the found heroin bindles), spoons used to cook heroin, and a hypodermic needle. During a search of a bedroom, the officers found two additional used "cooker" spoons, a piece of aluminum foil with burn marks, and one or two hypodermic syringe needles that appeared to be have been used to inject a controlled substance such as heroin. During a search of the bathroom, an officer found "a hypodermic syringe" that someone had attempted to shove down the sink drain hole, and "on the top of the sink itself there was the lid to a gram scale that was covered with a brown tarry substance" that "appeared to be tar heroin residue." The actual gram scale was not found, but the condition of the scale lid indicated to the officers that "there had been a scale in the house and that th[e] scale had been used to weigh out heroin, tar heroin specifically . . . ."

At the residence Officer Bishop spoke with Fisher after he was detained and waived his *Miranda* rights. The officer testified that Fisher admitted he used heroin, knew defendant to be a heroin seller who typically sold "20s," and had purchased heroin from defendant in the past. Fisher also admitted that on the day of the search he was at the residence to buy drugs from defendant. At trial Fisher denied that he ever bought heroin from defendant or that he ever saw defendant sell heroin. After reading Bishop's police report, Fisher testified he did not remember telling the officer that he knew defendant sold heroin or the amounts of heroin sold by defendant, but admitted that the officer could have accurately reported Fisher's statements. Fisher also conceded it was possible he told the officer he had purchased heroin from defendant on three or four occasions.

As the officers were searching the residence, a man came to the front door with $40 on his person and he was also detained by officers. Defendant was arrested after the officers completed their search and seizure of evidence at the residence. During the booking process, an officer found two bindles of heroin in defendant's pants pocket. One bindle was wrapped in yellow cellophane and one bindle was wrapped in white

3

cellophane.  Defendant said the bindles were "fifths" (about .2 grams) and he believed "that's what [he] paid for."  While incarcerated, defendant wrote a letter in which he stated he "got cracked for possession for sale on 3/9/11 was not profiteering."  All but two of the seized 12 bindles of heroin weighed .2 grams or less; the other bindles weighed about .4 grams and about .6 grams, with the total weight of recovered heroin being about two grams.  After being qualified as an expert "in the identifications of narcotics and possession of heroin for sale," Officer Watson testified the recovered heroin was "a usable amount" and its packaging indicated the heroin was more than just for personal use and was possessed for sale.  According to Watson, it would be more cost effective for a drug user to buy drugs in gram weights and then to break off small pieces for personal use.  The officer opined that unless a drug user was selling drugs there would be no reason to have bindles measured out in common sales weights and similar, unused packaging materials in the kitchen.  The officer opined the evidence demonstrated defendant was a "user dealer," as it was very common for a heroin user to sell heroin, to have other heroin users in his residence, and to allow other persons to use the heroin in the house.

## DISCUSSION

### I.    Sufficiency of Evidence to Support Conviction for Maintaining A Place for the Purpose of Selling, Giving Away, or Using Heroin (§ 11366)

As we now discuss, we conclude there is no merit to defendant's arguments seeking to set aside his conviction for maintaining a place for the purpose of selling, giving away, or using heroin (§ 11366[2]) on the ground of insufficiency of evidence.

---

[2]    Section 11366 provides, in pertinent part, that "[e]very person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using [a specified] controlled substance . . shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison."  By case law, the courts have held that a conviction for violating section 11366 requires that a defendant open and maintain a place for persons other than defendant on a repeated or continuous basis. (See, e.g., *People v. Franco* (2009) 180 Cal.App.4th 713, 726; *People v. Vera* (1999) 69 Cal.App.4th 1100, 1103 (*Vera*).)

Defendant initially argues his conviction for violating section 11366 should be set aside because there was no evidence showing that he rented the house for use as a "drug den," and not a residence. We disagree. By his argument, defendant "proposes that the sole justification for maintaining the residence must be the illegal activity, and that this illegality must be the 'unbroken, coherent whole' of the activity at the residence. . . . [However, he] fails to consider the obvious consequences of such an interpretation. If the house is totally and exclusively used for narcotics purposes, it cannot be a residence at all." (*People v. 25651 Minoa Dr.* (1992) 2 Cal.App.4th 787, 798-799.) Thus, we agree with those courts that "have addressed this issue" and have "concluded that such a limitation on section 11366 would render it meaningless." (*Id.* at p. 799; see *People v. Green* (1988) 200 Cal.App.3d 538, 544 (*Green*); *People v. Roeschlaub* (1971) 21 Cal.App.3d 874, 876-878; *People v. Clay* (1969) 273 Cal.App.2d 279, 283-284.)

We also see no merit to defendant's argument that his conviction for violating section 11366 should be set aside because the evidence did not show that he maintained the residence for the purpose of selling, giving away, or using heroin by other persons. " 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" [Citation.] " 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' " ' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

5

Contrary to defendant's contention, his admission (that he was not profiteering) and Fisher's statements to the police regarding both past activities at the residence and his reason for being at the residence on the day of the search, together with the physical evidence found throughout the residence, was sufficient circumstantial evidence supporting a reasonable inference that defendant "maintained this residence" for either selling, giving away, or "using and sharing [heroin] with other people." (*Green, supra,* 200 Cal.App.3d at p. 544.)

In reaching our decision, we see no merit to defendant's argument that we must not consider any evidence that heroin was sold at the residence because the jury found him guilty of only simple possession of heroin and not possession of heroin for sale. "[T]he trier of fact may accept part of the testimony of a witness and reject another part even though the latter contradicts the part accepted. [Citations.] As [the court] said in *Nevarov v. Caldwell* (1958) 161 Cal.App.2d 762, 777, 'the jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material.' " (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67-68.) Consequently, it is well settled that even if an acquittal on one charge is "factually irreconcilable" with the guilty verdict on another charge, "effect is given to both" the acquittal and the guilty verdict if the latter is supported by substantial evidence in the record. (*People v. Panah* (2005) 35 Cal.4th 395, 490; see *United States v. Powell* (1984) 469 U.S. 57, 64-69 [same rule applied in the federal courts].) As pertinent to this case, and despite defendant's arguments to the contrary, the jury's acquittal on the charge of possession of heroin for sale shows "no more than jury lenity, compromise, or mistake, none of which undermines the validity" of the guilty verdict on the charge of violating section 11366. (*People v. Lewis (*2001) 25 Cal.4th 610, 656.)

We conclude our decision by noting that we see nothing in *People v. Shoals* (1992) 8 Cal.App.4th 475 (*Shoals*), *People v. Hawkins* (2004) 124 Cal.App.4th 675 (*Hawkins*), or *Vera*, *supra*, 69 Cal.App.4th 1100, that supports defendant's argument that

6

his conviction for violating section 11366 should be set aside for insufficiency of evidence. Defendant's argument in effect asks us to reweigh the evidence, which we decline to do.

## II. Trial Court's Instructions Concerning the Crime of Maintaining A Place for the Purpose of Selling, Giving Away, or Using Heroin (§ 11366)

Using the language in CALCRIM No. 2440, the court instructed the jury on the felony offense of maintaining a place for the purpose of selling, giving away, or using a controlled substance (heroin), as follows: "To prove the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant maintained a place; [¶] AND [¶] 2. The defendant maintained the place with the intent to sell, give away, or allow others to use a controlled substance, specifically heroin, on a continuous or repeated bas[i]s at that place."

During deliberations, the jury sent the court the following question: "Regarding question of residence maintaining with intent to sell: Does a house have to be maintained with <u>solely</u> the intent to use, sell or give away Drugs? [¶] For example, when Mr. Myers [sic] initially rented the house, did he have to have known the purpose for renting was to use drugs?" (Underline in original.) In response and without apparent objection by either party, the court sent the jury the following written response: "1) No, the house does not have to be maintained <u>solely</u> for the purpose and intent to use, sell, or give away drugs. [¶] 2) No, the defendant did not have to initially rent the house for the purpose of using, selling, or giving away drugs, but must have formed the specific intent to use, sell or give away drugs at that location, on a continuous or repeated basis, at or about the time of the alleged offense." (Underline in original.)

On appeal defendant argues the trial court incorrectly responded to the jury's questions because section 11366 is not violated where a defendant rents a place to use as a residence, but coincidentally also permits others to use drugs there. We disagree.[3]

---

[3] We reject the Attorney General's argument that the issue is not preserved for our review. " 'Generally, a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court.'

Even if defendant used the house as his residence, the court properly instructed the jurors that they could find "the house had a multiplicity of purposes" (*People v. 25651 Minoa Dr., supra,* 2 Cal.App.4th at p. 800), and that "regardless of which of th[e] prohibited purposes [was] actually involved" (*Vera, supra*, 69 Cal.App.4th at p. 1103), defendant's maintenance of the place for that purpose could be found to be a violation of section 11366. (See *Green, supra*, 200 Cal.App.3d at p. 544 ["section 11366 does not require that the place be maintained for the purpose of selling; it can be violated without selling, merely by providing a place for drug abusers to gather and share their experience"].) Neither *Shoals, supra*, 8 Cal.App.4th at p. 492, *Hawkins, supra,* 124 Cal.App.4th at p. 683, nor *Vera*, *supra,* 69 Cal.App.4th at pp. 1102-1103, supports defendant's argument that a violation of section 11366 requires that the place intended to be provided to others for the prohibited purposes of selling, giving away, or using illegal drugs, be maintained solely for one of those illegal purposes *and for no other purpose*.

III.   **Defendant's Request for Resentencing Pursuant to Penal Code Sections 667 and 1170.12, as amended by Proposition 36, the Three Strikes Reform Act of 2012**

After defendant was convicted and sentenced to indeterminate life sentences under the former Three Strikes law, "the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code] sections 667 and 1170.12 and added [Penal Code] section 1170.126 (hereafter the Act). The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and

---

[Citation.] Defendant's claim, however, is that the instruction is *not* correct in law, and that it violated his federal constitutional rights because it omitted [a] required element[ ] from the statute. This type of claim need not be preserved by objection before an appellate court can address the issue. [Citation.] We therefore consider defendant's instructional error challenge." (*People v. McPheeters* (2013) 218 Cal.App.4th 124, 132.)

proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. ([Pen. Code,] §§ 667, 1170.12.) The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. ([Pen. Code,] § 1170.126.[4])" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168 (*Yearwood*).)

There is no dispute that if defendant had been sentenced for his current convictions after the effective date of the Act, indeterminate life sentences would not have been imposed. Defendant argues that because his conviction is not yet final, this court should vacate his sentence and remand the matter to the trial court for resentencing under Penal Code sections 667 and 1170.12, as amended by the Act. The Attorney General argues because defendant was currently serving his life sentences on the effective date of the Act, defendant's only remedy is to wait until his conviction is final and then petition for recall of his sentence pursuant to the procedures in Penal Code section 1170.126. In reply, defendant opposes the Attorney General's remedy, arguing,

---

4      Penal Code section 1170.126 reads, in pertinent part: "(a) The resentencing provisions under this section and related statutes are intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence. [¶] (b) Any person serving an indeterminate term of life imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12 upon conviction, whether by trial or plea, of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of Section 1170.12, as those statutes have been amended by the act that added this section."

among other things, that Penal Code section 1170.126 does not provide an exclusive remedial procedure and allows a defendant to choose to either seek remand on direct appeal or petition for recall under Penal Code section 1170.126. We agree with the Attorney General's position, which is supported by current case law, that defendant is not entitled to vacatur of the sentence and remand for resentencing.

In *Yearwood*, *supra*, 213 Cal.App.4th 161, the Fifth District Court of Appeal, after an extensive discussion including a review of "the arguments contained in the voter information guide" in favor of the Act, and the actual language used in the amended statutes, concluded that Penal Code sections 167 and 1170.12, as amended, were not meant to apply retroactively to persons, like defendant, who were serving a sentence pursuant to the former three strikes law on the effective date of the Act, but whose convictions were not yet final. (*Yearwood, supra,* at pp. 168, 171, 175-177.) In reaching its decision, the *Yearwood* court noted that a person in defendant's position was not without a remedy: "A prisoner who was sentenced to an indeterminate life term before the Act's effective date may file a [Penal Code] section 1170.126 petition upon finality of the judgment. If qualified, a prisoner will ordinarily receive the same sentencing reduction that would have been obtained if he or she had been resentenced under amended [Penal Code] sections 667 and 1170.12. The discretionary public safety exception to second strike sentencing that is present in [Penal Code] section 1170.126, but not in amended [Penal Code] sections 667 and 1170.12, is rationally related to a legitimate state interest. It increases the likelihood that prisoners whose sentences are reduced or who are released due to the Act will not pose an unreasonable risk of danger to the public." (*Yearwood, supra*, at p. 179.) We see no further need to address the issue, which is currently pending before our Supreme Court. (See, e.g., *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted Aug. 14, 2013, S211275 [holding the Act is not retroactive].) In reaching our decision, we express no opinion on whether or not defendant is entitled to resentencing pursuant to Penal Code section 1170.126.

## DISPOSITION

The judgment is affirmed.

10

_____

Jenkins, J.

I concur:

_____

McGuiness, P. J.

*People v. Mika L. Meyers*, A135489

11

POLLAK, J., Concurring and Dissenting.

I agree with the majority that defendant's conviction should be affirmed for the reasons stated in the majority opinion. However, pending resolution of the issue now before our Supreme Court, I would remand the matter for resentencing pursuant to the provisions of Penal Code sections 667 and 1170.12 as modified by the approval of Proposition 36 in November 2012. I would adopt the reasoning in two of the cases now under review (*People v. Contreras* (2013) 221 Cal.App.4th 558, review granted Jan. 29, 2014, S215516; *People v. Lewis* (2013) 216 Cal.App.4th 468, review granted Aug. 14, 2013, S211494). In my view, the analysis in these cases produces a result more fair, efficient and in accord with the apparent intent of Proposition 36 than the alternative of requiring a defendant sentenced under the prior version of the statute but whose conviction was not final when the revisions became effective to commence a new proceeding to recall the sentence (Pen. Code, § 1170.126). Should this defendant, who has begun serving his sentence, be treated any differently than a defendant sentenced at the same time who was permitted to remain out of custody pending a determination of his or her appeal? Should a defendant who obtains a reversal of some but less than all of the offenses on which he or she was convicted, requiring a remand for resentencing, be resentenced under the former provisions of Penal Code sections 667 and 1170.12 that are no longer in effect? In my view, there is no good reason for answering these questions in the affirmative or for refusing to apply the new provisions in cases not yet final simply because the defendant has begun serving the sentence.


_____
Pollak, J.


*People v. Mika L. Meyers*, A135489


1