Filed 12/10/13  P. v. Thomson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>CHRISTOPHER ROY THOMSON, et al.,<br><br>    Defendants and Appellants. | Consolidated Case Nos.<br>F063932 & F063984<br><br>(Super. Ct. No. TF005584A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant Christopher Roy Thomson.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant Dayna J. Blackwood.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted Christopher Roy Thomson of (1) felony possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1),[1] (2) felony possession of a controlled substance, hydrocodone (§ 11350, subd. (a); count 2), and (3) misdemeanor possession of drug paraphernalia (§ 11364; count 3). The jury convicted Thomson's co-defendant, Dayna J. Blackwood, of felony maintaining a place for using or furnishing methamphetamine (§ 11366; count 4). Blackwood also was charged and tried with Thomson on counts 2 and 3; the trial court, however, declared a mistrial with respect to Blackwood on those counts after the jury was unable to reach verdicts on them.

In a bifurcated court trial, the trial court found true allegations that: (1) Thomson and Blackwood each had suffered a prior serious or violent felony conviction (Pen. Code, §§ 667, subds. (c)-(j) and 1170.12, subds. (a)-(e)); (2) Thomson had served two prior prison terms (Pen. Code, §§ 667.5, subd. (b)); (3) Thomson had a prior narcotics conviction (§ 11370.2, subd. (c)); and (4) Blackwood had served one prior prison term (Pen. Code, § 667.5, subd. (b)).

At the sentencing hearing, the trial court denied appellants' motions to strike their prior convictions. The trial court sentenced Thomson to an aggregate prison term of 12 years and four months, comprised of six years on count 1 (double the three-year upper term), a consecutive 16 months on count 2, a consecutive two years for his prior prison terms, and a consecutive three years for his narcotics prior. The trial court sentenced Blackwood to an aggregate prison term of seven years, four months, comprised of six years (double the three-year upper term) on count 4 and a consecutive 16 months, which was resentencing on Blackwood's prior case, No. TF005367A.

---

[1] Undesignated statutory references are to the Health and Safety Code unless otherwise noted.

We consolidated Thomson's and Blackwood's separately filed appeals. Thomson contends his judgment must be reversed because the trial court abused its discretion when it (1) denied his motions to sever his case from Blackwood's, (2) excluded evidence of Blackwood's probation status, and (3) allowed a prosecution witness to testify that the incident began when police were conducting a lawful search. He also asks us to review the sealed in camera hearing of his motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We reject Thomson's contentions and affirm his judgment.

Blackwood contends her judgment must be reversed because there is insufficient evidence to support her conviction on count 4. She also argues (1) the criminal laboratory analysis fee imposed was unauthorized, (2) the trial court erred when it did not award custody credits for the sentence she was serving under case No. TF005367A, and (3) she is entitled to additional custody credits under Penal Code section 4019. We agree with Blackwood the evidence is insufficient to sustain the maintaining-a-place conviction. Accordingly, we reverse her conviction.

## FACTS

In March 2009, Autumn Arias was living in Taft in a home her sister owned. Arias rented a bedroom in the home to Blackwood, who shared the bedroom with Thomson. Thomson and Blackwood lived with Arias for about five months from January to May 2009. Blackwood paid monthly rent for the room; Thomson did not pay rent. Arias, who said she was home about 90 percent of the time, did not see a lot of people coming in and out of Blackwood's bedroom. While Blackwood had a few people come over, Arias did not necessarily hear or see them because Blackwood's bedroom door was right by the front door. Most of the time, the visitors who did come seemed to be there to see both Blackwood and Thomson.

At about 10:25 p.m. on March 29, 2009, deputies with the Kern County Sheriff's Department came to the home to conduct a lawful search of a bedroom there. When Deputy Robert Patrick knocked on the front door, Thomson answered it. The deputies

3.

detained Thomson in the living room. Dawson DeCambra and his sister, Danelle, were also present in the home. The deputies told Thomson they were there to conduct a search and asked if Blackwood was home; Thomson said she was not there.

The deputies searched the bedroom belonging to Blackwood and Thomson; this was the only place in the house they searched. In the bedroom, they found a television which was turned on and appeared to be showing a live picture of the front gate of the house. The deputies later confirmed the picture was live and found a security camera mounted on the front porch, which projected the image onto the television. On the dresser in the bedroom, the deputies found: (1) three cans, one of which was identified as a can of furniture polish and the others as air freshener cans, all of which had suspected methamphetamine residue on their bottoms; (2) a working digital scale; and (3) a police scanner, which was set to monitor Taft police and Kern sheriff channels.

Under the bed, deputies found a potato chip can; the bottom of the can could be unscrewed, revealing a hidden compartment. Inside that compartment, deputies found: (1) three individually packaged bags of methamphetamine weighing 3.36, 4.41, and .95 grams respectively; (2) a hypodermic needle; (3) additional baggies; and (4) seven hydrocodone pills. Also under the bed were a bag of men's clothes and a pair of men's shoes; the potato chip can was found between the bag and the shoes. The parties stipulated the three baggies in the can contained usable amounts of methamphetamine and the pills were a usable amount of hydrocodone.

After searching the bedroom, Patrick went to the living room to speak with Thomson. Patrick searched Thomson and found $760, mostly in $20 bills, in his left pants pocket. Thomson claimed the money was from work. Patrick asked Thomson about the men's clothing in the bedroom; Thomson said all of the men's clothing in the room belonged to him. When Patrick asked Thomson if he lived in the room with Blackwood, Thomson "basically said that I could say that he lived there because all of the stuff that he owns is there." Thomson said he stayed there three to five nights per week.

4.

The deputies found Blackwood and Alexzandra Sandoval in a car parked near the house. Sandoval was arrested for being under the influence of methamphetamine. She also possessed .32 grams of methamphetamine and carried a digital scale. Blackwood was brought back to the home. Arias later saw Blackwood and Sandoval in the back of a patrol car. Patrick had never seen Sandoval at Arias' house before; he knew she lived elsewhere. Arias had seen Sandoval at the house about 15 times, when she was visiting Blackwood in her bedroom.

Thomson initially denied any knowledge of the items found in the bedroom, but later, at the Taft substation, he admitted to the deputies that he was a methamphetamine user and everything in the potato chip can belonged to him. In his statement, Thomson claimed that Blackwood did not know he had drugs in the house and she should be released. Thomson made his admissions after being told Blackwood had been arrested. After the deputies told Thomson that Blackwood would be released, Thomson asked if there was any way Blackwood could get some of the money and volunteered the following statement: ". . . all that money . . . is from I actually didn't even get to make any money off the goddam drugs, because I never had no time to sold them. You guys showed up and took 'em. Before I could even give the fucking shit." A recording of the substation interview was played for the jury.

Patrick testified the methamphetamine residue on the bottom of the furniture polish and air freshener cans showed someone was using methamphetamine by injecting it. Patrick explained a user will put methamphetamine in the bottom of the can, cover it with a piece of cotton, add water, dissolve the methamphetamine in the water, put the needle in the cotton, and draw the methamphetamine and water mixture through the cotton to filter it before injecting it in the user's vein.

Senior Sheriff's Deputy Josh Nance opined that the methamphetamine found in the potato chip can was possessed for sale based on the amount of methamphetamine found, the digital scale, the scanner, the security camera, and, to a lesser extent, the cash

5.

found in Thomson's pants pocket. The way the methamphetamine was packaged in three different bags, along with the presence of the eight other baggies, which most often are used to package a drug for sale, contributed to his opinion. Nance explained that people who traffic methamphetamine often use security cameras to see whether a person at the door is law enforcement, a customer, or someone who might steal their stash or money. Nance also explained that methamphetamine dealers use police scanners to help them stay away from locations where officers are and to find out who might be an informant. Nance came across digital scales often in methamphetamine sales investigations. Based on the syringe's location and surrounding circumstances, he recognized it as one that is often used to inject methamphetamine.

### *Defense Case*[2]

Danelle DeCambra testified that she attended a barbecue at the home on the evening of March 29, 2009, with her brother Dawson; Thomson and Blackwood were there. Sandoval also was present, but she stayed primarily in Blackwood's room. Sandoval and Blackwood left the home together about 20 minutes before the deputies arrived. Dawson DeCambra testified he attended the barbecue. He claimed he opened the front door when the deputies arrived. The deputies then detained Thomson. Thomson's mother, Katherine Jackson, testified that before March 29, 2009, Thomson was living with her, although he sometimes stayed the night with Blackwood.

### **DISCUSSION**

#### I. Thomson's Appellate Issues

Thomson raises three issues concerning pretrial rulings. He asserts the trial court (1) erroneously excluded from evidence testimony that the search of the bedroom was based on Blackwood's probation search condition, thereby depriving him of his federal constitutional right to present a complete defense, (2) abused its discretion in denying his

---

[2] Only Thomson presented witnesses in defense.

subsequent motion to sever his trial from Blackwood's because he was precluded from introducing this evidence in the joint trial; and (3) committed reversible error when it allowed the prosecutor to introduce "propensity evidence" that the search "was a 'lawful' search." Thomson also asks us to review the sealed in camera hearing of his motion under *Pitchess*, *supra*, 11 Cal.3d 531.

A. The Pretrial Rulings

1. Pretrial Proceedings

Before trial, a three count information was filed jointly charging Thomson and Blackwood with possession of: (1) methamphetamine for purpose of sale, (2) hydrocodone and (3) drug paraphernalia. Thereafter, the prosecution successfully moved to consolidate this case with another in which Thomson was charged in three counts with drug offenses stemming from his arrest on July 13, 2010. In an amended consolidated information, the charges from the July 13, 2010 arrest were labeled counts 1 through 3, while the charges from the March 29, 2009 search were labeled counts 4 through 6. After the information was amended, Thomson's motion to suppress the evidence seized as a result of his July 13, 2010 arrest was granted, while his motion to suppress evidence from the March 29, 2009 search was denied.

At the pretrial hearing, the court granted the prosecutor's motion to dismiss counts 1 through 3 for lack of evidence. The court ordered the information be further amended to designate counts 4 through 6 as counts 1 through 3.

Later in the pretrial hearing, Thomson's trial counsel moved to introduce the court record of Blackwood's conviction upon which the probation search was conducted, "which is drugs." Blackwood's trial counsel objected and suggested the question be deferred until Blackwood's in limine motions were presented, as one of her motions concerned her criminal history. Blackwood's counsel did not know whether the conviction for which she was on probation had anything to do with the type of drugs or

7.

paraphernalia found in the present case because he had not been given any discovery regarding the evidence used against her there.[3]

The trial court commented that, while many times a jury is told that officers responded to a location to conduct a probation search, "[v]ery rarely do we get into why you were there. Because so and so was on probation for X crime, is a back door way of getting in information. A 352 problem obviously arises." The court assumed Thomson's counsel wanted to get that information in to show that the police were really after Blackwood and not his client because she was the one on probation. The court further stated it implies to the jury that, because the person is on probation and had done something in the past, "and we've gone to the house again to see if they're still doing it, and well, in fact, we did find narcotics in the house and she was on probation for it before. Really does cause a lot of problems there." The court told Thomson's counsel it was "inclined to deny your motion under 352 grounds[,]" primarily because of the effect on Blackwood. The court added that it was "a backdoor way of 1101 evidence to show that, in fact, she had done something in the past and she is doing it again here. [¶] So I'm going to deny it under both grounds."

Thomson's counsel then raised "5th, 6th and 14th Amendment objections on the ground that [it] would deny my client a fair trial." He also moved, based on the trial court's ruling, "for a separate trial with the co-defendant at this time." The trial court asked if he was making a motion to sever; Thomson's counsel responded, "Sever, yes." His stated grounds for the motion were the 5th, 6th, and 14th Amendments of the federal Constitution and due process, "and it would deny my client the right to present evidence on his behalf of third party culpability." Thomson's counsel explained the evidence

---

[3] According to Blackwood's written motions in limine, (1) she was convicted on December 10, 2008 of violating section 11364, possession of drug paraphernalia, (2) at the time of the search at issue in this case, she was on misdemeanor probation for that case, and (3) her probation included search terms for narcotics and paraphernalia.

8.

would go to "the different defenses that we have in this case," and the exclusion of the evidence "would prevent us from presenting that defense in our case."

When the court asked Thomson's counsel if he had direct or circumstantial evidence linking Blackwood to the crime, counsel responded, "Yes." The court responded: ". . . first of all, we're talking about third party culpability, and she's a co-defendant. . . . [¶] . . . Number one. [¶] and the case you want, . . . is the seminal case in California on third party culpability is People versus Hall [*People v. Hall* (1986) 41 Cal.3d 826 (*Hall*)], which states there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime. [¶] Evidence of mere motive or an opportunity to commit the crime in another person will not suffice to raise a reasonable doubt. [¶] So I don't – I don't see it there. . . . [¶] . . . You know, once the trial starts, if you want to point the finger at Blackwood, and say that Blackwood was in possession of the narcotics and whatever paraphernalia is found with it, you're certainly entitled to do so, but I don't think at this point you're entitled to a motion to sever because you feel that she did it."

The prosecutor opposed the motion to sever, arguing severance was unnecessary as trial of the charges involved the same evidence and witnesses, none of the evidence against Thomson would be ruled inadmissible against Blackwood and vica versa, and they would not be running into "Aranda/Bruton issues." After Blackwood's counsel declined the court's invitation to respond further, the court denied the motion to sever "on those grounds." Thomson's counsel then stated he was bringing "a 352 objection to that motion," which the court promptly denied.

The court thereafter ruled on Blackwood's in limine motions. In one of those motions, Blackwood moved to exclude her convictions for misdemeanor paraphernalia, "a felony 11377 from two years ago[,]" and her probation status, which her counsel argued was irrelevant and "simply serves as character evidence." Counsel explained the offense for which she was on probation was a violation of "Health and Safety Code

9.

Section 113550 [*sic*], a misdemeanor[,]" and since the controlled substance she was convicted of being under the influence of was not identified, the conviction was irrelevant to prove any fact in dispute in this case.

The prosecutor responded that the listed priors would not come up, but "the fact that this was a probation search" could come up if the defense argues or tries to elicit testimony that the bedroom searched was not Blackwood's bedroom. The prosecutor explained that the deputies had "searched this particular bedroom several different times, and I would show that deputies do know that bedroom that was searched in this case is the same bedroom that Miss Blackwood had on prior occasions to show ownership, control, and possession of the items found within it." The prosecutor confirmed the deputies were at the house on previous probation searches, during which they searched the same bedroom.

The court proposed that the prosecutor elicit testimony that the deputies responded to the house on March 29, 2009 "for the purpose of a probation search and what happened on that particular date." Blackwood's counsel objected, stating the evidence was irrelevant because Blackwood was not disputing that she resided in the bedroom. Thomson's counsel also objected, stating that if the only testimony was that it was a probation search, the jury would infer Thomson was the one on probation and he would be denied "part of our defense that the search was conducted because of the co-defendant's probation status." Thomson's counsel raised a "352 objection as to that framing of the testimony[,] it would be highly prejudicial to our case. [¶] So that would be another reason to sever the defendants in this particular trial."

The court asked, "So you're saying that the fact that your client was at a home that was being searched for a probation search and he's found in the home where narcotics are, the fact that the jury will hear that he was at the house of a probation search is prejudicial to him?" Thomson's counsel answered, "Yes. It would infer and be confusing and misleading that he was the one that was on probation, because he's the

10.

one, allegedly, that answered the door." Blackwood's counsel stated he thought they were not going to get into the fact it was a probation search since Blackwood was not contesting that it was her room. The court responded that the word "probation" could be removed and the officer could simply be asked whether he was there to conduct a "lawful search" on that date and time, thereby "missing the whole problem." The court further explained that it normally would not propose this, but since Thomson's counsel felt it would prejudice his client, "we'll just simply state on this date and time did you respond to this residence . . . for the purposes of conducting a lawful search."

While Blackwood's counsel and the prosecutor agreed with that solution, Thomson's counsel stated he wanted the court to rule they were there to conduct a probation search based on Blackwood's probation status. The court understood that, but said it was not going to let Thomson have his "cake and eat it too." Accordingly, the court ruled the officer could testify they were there to conduct a "legal search of the residence," and if either counsel wanted to challenge the legality of the search, then the jury would hear it was a probation search.

Blackwood's counsel then proposed the jury simply be instructed to assume any evidence the officers obtained and presented to the court was done legally, which would render the "entire moot point." Thomson's counsel did not think that would be proper. While he did not intend to ask the officers if the search was legal, he wanted to challenge their credibility as to the search and using the word "legal" would infer all of the officers' conduct was proper. The court responded that it might reverse its ruling and allow the officers to say it was a "valid probation search." The court told Thomson's counsel he would not be allowed to ask the officers if it was Thomson who was on probation, "[b]ecause that makes it sound like they're after one person or another." The court further stated counsel could not "have it both ways. If you ask the officers who was on probation and who wasn't, that's allowing to get in character evidence towards [Blackwood], and we've gone over there. . . . [¶] . . . so the jury will probably make an

11.

inference that both of you were on probation. [¶] If you want to say that they were there to conduct a legally valid search, we avoid all of these problems."

Thomson's counsel responded that it was only a problem for Thomson if he could not have testimony that Thomson was not the subject of the search, which prevents Thomson from having a fair trial. The court asked if he wanted the jury to hear it was a probation search. Counsel responded he did, but he also wanted the jury to know the search was not due to Thomson's probation status, which was part of his defense. The court asked how they would then get around the fact that would "point the finger" at Blackwood. Counsel responded that you could not, which was "part of our severance motion" in regard to the inability to present Thomson's defense. The court asked if it could get around a severance motion by telling the jury police were there to conduct a legal search of the residence. Counsel did not think that gave the jury the "necessary information" regarding Thomson's status during the search.

Blackwood's counsel thought Thomson's counsel was trying to introduce irrelevant evidence of the officers' state of mind before the search by turning the motive for searching the residence into substantive evidence to shift the focus onto Blackwood and vindicate Thomson. Blackwood's counsel further pointed out that, to the extent Thomson's counsel wanted to challenge the legality of the search to damage the officers' credibility, the court already had determined the search was proper during the litigation of the suppression motion. He further pointed out that Thomson's counsel essentially was "trying to backdoor character evidence based on this irrelevant intent of the officers at the time of the search[,]" namely that they conducted the search because they believed or suspected Blackwood was guilty of something, which ran afoul of Thomson's motion in limine, which the court granted, to preclude evidence of the officers' beliefs.

The court then stated its "final ruling on this is that the prosecution will present the following evidence: Asking the officers on this date and time at this location were you there to conduct a lawful search of the residence. Period."

12.

At the outset of the court session the following day, Blackwood's counsel informed the court that he and the prosecutor had agreed to a proposed amended information which would remove Blackwood from count 1 and leave Thomson as the only defendant on that count, and add count 4 against Blackwood only for violating section 11366. The prosecutor stated the amendments would best reflect the evidence that would be presented at trial.

Thomson's counsel objected, asserting the amendment affected Thomson's due process and fair trial rights, and violated his rights under the 5th, 6th and 14th Amendments of the federal Constitution. Counsel explained he believed the prosecutor wanted to dismiss count 1 against Blackwood and proceed only against Thomson based on the tape. Counsel believed the amendment unduly implied Thomson was guilty of possession for sale and Blackwood is not, and if it were granted, he would move to continue the trial.

The prosecutor responded that the "finger's always been pointed" at Thomson and, based on all the evidence, section 11366 was one of the most appropriate charges that should have been brought against Blackwood, but was somehow overlooked. The prosecutor did not think the charge would affect Thomson in any way, as the same evidence would be presented against him. The prosecutor thought it would be tough to prove the 11378 against Blackwood, noting it was a much stronger count against Thomson.

Thomson's counsel thought the amendment razed Thomson's third party culpability defense, namely that Blackwood was responsible for the possession of the drugs for sale, changed "the dynamics of our defense" and required a continuance to prepare for the changed counts against Blackwood and the way he was going to present Thomson's case. Blackwood's counsel responded that Blackwood's dismissal from count 1 did not preclude Thomson from pointing the finger at Blackwood and any

13.

prejudice to Thomson by being the sole defendant on count 1 was cured by the jury instructions.

Thomson's counsel renewed the motion to sever Blackwood in this case "because there's different charges now as to her and they are not part of our charge." The court denied the motion. Thomson's counsel also argued he should now be able to present the fact that Blackwood was on probation and the search was conducted based on a probation search due to the charge of "maintaining a place." He asked the court to revisit the issue and allow the evidence. When the court asked how the amendment changed the probation search issue, Thomson's counsel answered that it involved the residence and the search was based on Blackwood's probation, therefore the probation search was tied "more closely to the facts of the case and the evidence that the jury should hear." The court denied the motion. The court then granted the motion to amend, finding no prejudice to Thomson because the prosecution would be putting on the same evidence "either way."

2. Denial of Motion to Admit Evidence of Probation Search

Thomson contends the trial court erred when it denied his motion in limine to admit evidence that the search was a probation search conducted based on Blackwood's probation search condition. The trial court denied the motion on the grounds that the evidence was inadmissible character evidence under Evidence Code section 1101 and violated Evidence Code section 352. On appeal Thomson challenges only one of these grounds, asserting the trial court improperly exercised its discretion to exclude the evidence under Evidence Code section 352. He asserts the trial court refused to admit the evidence of Blackwood's probation status, not on the grounds it lacked probative value, but because it was so prejudicial to Blackwood. He contends the exclusion of the evidence denied him a fair trial and due process under the Fifth, Sixth and Fourteenth Amendments.

14.

We review a trial court's ruling excluding evidence under an abuse of discretion standard.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.)  Moreover, in reviewing a judgment against a criminal defendant, "'[w]e must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed.'"  (*People v. Tang* (1997) 54 Cal.App.4th 669, 677.)

Here, Blackwood's probation status and criminal history clearly were inadmissible character evidence under Evidence Code section 1101.  As Thomson admits, he wanted to use the evidence to show that it was Blackwood, not he, who possessed the drugs.  A criminal defendant has the right to present evidence of third-party culpability if the evidence is capable of raising a reasonable doubt about his or her own guilt.  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325.)  However, as our Supreme Court has explained, the admission of third-party culpability evidence remains subject to the general requirement of relevance and the trial court's discretion to exclude unduly prejudicial or confusing evidence:  "'We repeatedly have indicated that, to be admissible, evidence of the culpability of a third party offered by a defendant to demonstrate that a reasonable doubt exists concerning his or her guilt, must link the third person either directly or circumstantially to the actual perpetration of the crime.  In assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a reasonable doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under Evidence Code section 352.  [Citations.]' [¶]  In *People v. Hall* (1986) 41 Cal.3d 826, we held that 'the third-party evidence need not show "substantial proof of a probability" that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt.'  (*Id.* at p. 833.)  'Our holding [in *Hall*] did not, however, require the indiscriminate admission of any evidence offered to prove third-party culpability.  The evidence must meet minimum standards of relevance:  "evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be

15.

direct or circumstantial evidence linking the third person to the actual perpetration of the crime." [Citation.] We also reaffirmed that such evidence is subject to exclusion under Evidence Code section 352.'" (*People v. McWhorter* (2009) 47 Cal.4th 318, 367-368.)

Evidence of prior criminal conduct offered to show merely that a third party was more likely to be the perpetrator of the current crimes is generally inadmissible. (Evid. Code, § 1101, subd. (a); *People v. Davis* (1995) 10 Cal.4th 463, 501 (*Davis*); *People v. Farmer* (1989) 47 Cal.3d 888, 921 (*Farmer*), overruled on another ground in *People v. Waidla* (2000) 22 Cal.4th 690, 724, fn. 6.) An exception is where prior conduct evidence is "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . . ) other than [the actor's] disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) These rules apply to evidence raising the inference of third party culpability. (*Davis*, *supra*, 10 Cal.4th at pp. 500-501; *Farmer*, *supra*, 47 Cal.3d at p. 921.) Evidence linking a third person to the perpetration of the crime should be treated like any other evidence; but if the proffered evidence does not show a fact other than the third party's criminal disposition, it is properly excluded pursuant to Evidence Code section 1101. (*Farmer*, *supra*, 47 Cal.3d at p. 921; see *Davis*, *supra*, 10 Cal.4th at p. 501 [evidence offered to show a third party was more likely the perpetrator of the charged murder because he had a history of violence was properly excluded under Evidence Code section 1101, subdivision (a), because it was not offered to show a fact other than the third party's criminal disposition].)

Thomson asserts he was not attempting to use the evidence to show third party culpability based on Blackwood's disposition to commit the possession crimes. Instead, he contends Blackwood's probation status linked her to the drugs seized in her bedroom, and was evidence relating her "ongoing criminal activity of dealing drugs[,] and storing those drugs in her bedroom." He claims Blackwood's probation status, coupled with evidence that the deputies had searched her room other times pursuant to the probation

search condition, shows the deputies searched her bedroom because they believed she was engaged in ongoing criminal activity.

Although Thomson characterizes the evidence as relating to something other than Blackwood's disposition to commit the crime, in reality he is attempting to portray Blackwood as the one who possessed the drugs based on her prior drug-related convictions and probation search condition, i.e. based on her disposition to commit such crimes. Thomson admits he intended to use the evidence to show that Blackwood "more likely than [Thomson] possessed the seized drugs for sale." But this is precisely the use that is forbidden by Evidence Code section 1101, as "[s]uch evidence does not amount to direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Davis*, *supra*, 10 Cal.4th at p. 501.) As in *Davis*, "the proposed evidence did not relate to motive and intent but was essentially an attempt to show that [Blackwood] was more likely to have been the [one who possessed the methamphetamine for sale] because [she] had a history of [drug related offenses]." (*Ibid.*) The evidence therefore was properly excluded under Evidence Code section 1101 without regard to Evidence Code section 352. Even if, as Thomson claims, the court erred in its Evidence Code section 352 analysis, there was no abuse of discretion in excluding the evidence under Evidence Code section 1101.

Thomson's contention that the exclusion of the evidence violated his federal constitutional right to present a complete defense is unpersuasive. Although "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense" (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302), evidence proffered to show third-party culpability "'may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is *speculative* or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial.'" (*Holmes v. South Carolina* (2006) 547 U.S. 319, 327; see also *People v. Prince* (2007) 40 Cal.4th 1179, 1243 (*Prince*) ["'[W]e . . . reject defendant's various claims that the trial court's

exclusion of the proffered [third-party culpability] evidence [under Evid. Code, §§ 350, 352] violated his federal constitutional rights to present a defense . . . There was no error under state law, and we have long observed that, "[a]s a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [state or federal constitutional] right to present a defense."'"])

3. Testimony on the Legality of the Search

Thomson contends the trial court erred when it allowed the prosecutor to elicit confirmation from Deputy Patrick that he and the other deputies were "there to conduct a lawful search of a bedroom in that residence[.]" He argues the admitted evidence violated Evidence Code section 1101, subdivision (a), and his rights to due process and a fair trial because the jury might speculate the officers searched the bedroom because of past criminal conduct on his part.

The Attorney General asserts the claim is forfeited because Thomson failed to object below on Evidence Code section 1101 grounds. (*People v. Raley* (1992) 2 Cal.4th 870, 892 [generally, "'questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.'"].) Thomson contends he objected on this ground when his counsel argued that telling the jury the search was legally valid would prevent him from receiving a fair trial because the fact was he was not on probation and the probation search was on Blackwood's "behalf[,]" and the jury had "a right to know that it was not my client's probation status that the search was conducted." However, this was not a specific enough objection to place the trial court on notice that he was objecting on Evidence Code section 1101 grounds. (See, e.g., *People v. Valdez* (2012) 55 Cal.4th 82, 130.)

In any event, Thomson fails to show that Evidence Code section 1101 is applicable or any error occurred. Evidence Code section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character (whether in the

18.

form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Thomson contends permitting the prosecutor to tell the jury the search was lawful constituted evidence of his character because it "permitted the jury to speculate on what past crimes [Thomson] might have committed that would permit the police to lawfully search the residence while he alone was present."

We fail to see how telling the jury the search was lawful raises an inference that Thomson had a criminal history. No evidence was presented from which the jury could infer the reason for the search or what made it lawful; neither was there evidence from which the jury could infer Thomson had a criminal history. As the Attorney General points out, there are other reasons for a lawful search unrelated to a defendant's criminal history and his assertion that the jury would draw the inference he suggests is entirely speculative.

Thomson contends telling the jury a search is lawful is akin to telling the jury of a defendant's past arrests, which generally is inadmissible because it suggests the defendant has a bad character. (See, e.g. *People v. Williams* (2009) 170 Cal.App.4th 587, 609-610.) However, a juror is more likely to infer wrongdoing from an arrest than a search, as a search is permissible under a variety of circumstances that do not involve an inference of wrongdoing. Telling a jury a search was lawful also is not like profile evidence (see, e.g., *People v. Martinez* (1992) 10 Cal.App.4th 1001, 1006-1007), because it tells nothing of law enforcement's investigative techniques.

Moreover, the jury instructions precluded any speculation about past crimes by Thomson, as the jury was told to decide the facts based solely upon the evidence presented in this trial. Since the claim is forfeited and patently meritless, Thomson cannot show any infringement of his due process or fair trial rights. (*People v. Gurule* (2002) 28 Cal.4th 557, 652; see also *People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17.)

4. Denial of Thomson's Severance Motion

Penal Code section 1098, which creates a statutory presumption in favor of joint trials for jointly charged defendants, provides that "[w]hen two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials . . . in its discretion. . . . "

"A 'classic case' for joint trial is presented when defendants are charged with common crimes involving common events and victims." (*People v. Keenan* (1988) 46 Cal.3d 478, 499-500.) Under Penal Code section 1098, "a trial court *must* order a joint trial as the 'rule' and *may* order separate trials only as an 'exception.' (5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2158, p. 3021.)" (*People v. Alvarez* (1996) 14 Cal.4th 155, 190.)

A trial court's ruling on a severance motion is reviewed for abuse of discretion. In exercising its discretion, the court should separate the trial of codefendants "in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony." (*People v. Mossie* (1967) 66 Cal.2d 899, 917, fns. omitted; see also *Zafiro v. United States* (1993) 506 U.S. 534, 538-539 (*Zafiro*); *United States v. Heuer* (9th Cir. 1993) 4 F.3d 723, 733.) "Although what transpires at trial determines the prejudicial effect of an erroneous ruling on a motion for separate trials, '[w]hether denial of a motion to sever the trial of a defendant from that of a codefendant constitutes an abuse of discretion must be decided on the facts as they appear at the time of the hearing on the motion rather than on what subsequently develops.'" (*People v. Turner* (1984) 37 Cal.3d 302, 312, overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d 1104, 1115; see also *People v. Box* (2000) 23 Cal.4th 1153, 1195, disapproved on another point in *People v. Martinez* (2010) 47 Cal.4th 911, 948, fn. 10.) Thomson has the burden of showing that the court's refusal

to sever constitutes an abuse of discretion. (*People v. Wickliffe* (1986) 183 Cal.App.3d 37, 42.)

Thomson made two motions to sever during the pretrial hearing. The first, made while he and Blackwood were charged with the same three crimes, was based on the ground that separate trials were necessary to balance Thomson's right to present a defense with Blackwood's right not to have prejudicial evidence of her criminal conduct and probation status admitted. The second motion, made after the prosecutor and Blackwood's counsel proposed an amended information that would leave Thomson the sole defendant in count 1 and charge Blackwood solely with a new count 4, was based on the fact of these amendments.

On appeal, Thomson attempts to challenge both rulings, but does not discuss them separately. Instead, he makes blanket assertions that the trial court abused its discretion when it denied his motions for severance because (1) the evidence of Blackwood's probation status would have been admissible in a separate trial as evidence of third party culpability, (2) the evidence against him was weak, (3) he and Blackwood had mutually antagonistic defenses, as his defense depended on using Blackwood's probation status to show it was more likely that Blackwood possessed the methamphetamine for sale, (4) Blackwood's probation status was exonerating evidence, and (5) telling the jury the search was lawful created a prejudicial association with Blackwood.

We find no abuse of discretion. The centerpiece of Thomson's arguments is his assertion that Blackwood's probation status, and the reason for it, would have been admissible in a separate trial. Thomson is wrong, as the granting of separate trials could not have allowed him to introduce otherwise inadmissible evidence of Blackwood's bad character. "Nothing on the face of [section 1101] limits its application to evidence concerning a defendant. A 'person' under the provision is *any* person, whether or not a defendant. If the Legislature intended the statute to apply only to evidence of 'other crimes' by a defendant, it could have so provided." (*Davis*, *supra*, 10 Cal.4th at p. 501.)

As we have already explained, evidence linking a third person to the perpetration of the crime should be treated like any other evidence; if the proffered evidence does not show a fact other than the third party's criminal disposition, it is properly excluded pursuant to section 1101. (*Farmer*, *supra*, 47 Cal.3d at p. 921.)

Thomson asserts that in a separate trial, he would have used the evidence of Blackwood's prior convictions and probation status to "show that someone other than [Thomson] was guilty of possession for sale of the bedroom-seized drugs." But this is precisely the use that is forbidden by section 1101.

Thomson fails to show on appeal that the trial court abused its discretion in denying the motions for severance. Citing to principles generally applicable to joinder of offenses under Penal Code section 954, he argues the evidence was "cross-admissible[,]" i.e. would have been admissible in a separate trial, and the case against him weak.[4] But the evidence would not be admissible in a separate trial, as he contends. Moreover, a weak case was not joined to a strong one, as none of the charges was more egregious than any other and therefore none were "'unusually likely to inflame the jury against [Thomson].'" (*People v. Manriquez* (2005) 37 Cal.4th 547, 575-576.) Further, Thomson's case was the stronger of the two, as he confessed to possessing the drugs and admitted he intended to sell them.

Thomson claims he and Blackwood had mutually antagonistic defenses that required severance because he "was denied admission of the exculpating evidence of the

---

[4] Under Penal Code section 954, a trial court may consolidate charges for trial in certain circumstances. Refusal to sever charges on a defendant's motion may be an abuse of discretion where "'(1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all; and (4) any one of the charges carries the death penalty.'" (*Davis*, *supra*, 10 Cal.4th at pp. 507-508.)

probation search which showed that [Blackwood] had been convicted for drug offenses, and was under a probation search condition[,] . . . [which] would show it to be more likely it was [Blackwood] and not [Thomson] who possessed the seized drugs for sale." But, as we have explained, that evidence would have been inadmissible both in this trial and in a separate trial.

Thomson also asserts the defenses were antagonistic because he and Blackwood could only deny each possessed drugs by pointing the finger at the other. However, "'antagonistic defenses do not *per se* require severance, even if the defendants are hostile or attempt to case the blame on each other.'" (*People v. Hardy* (1992) 2 Cal.4th 86, 168; *Box*, *supra*, 23 Cal.4th at pp. 1196-1197 [severance not required merely because it is anticipated defendants will attempt to shift responsibility to each other].) As the United States Supreme Court has held, mutually antagonistic defenses are not prejudicial *per se* and Federal Rules of Criminal Procedure, rule 14 does not require severance even if prejudice is shown. (*Zafiro*, *supra*, 506 U.S. at pp. 538-539.) Instead, a federal trial court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial could compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." (*Zafiro*, *supra*, 506 U.S. at pp. 538-539.)

When the severance motions were made, Thomson's counsel did not explain why his defense was antagonistic to Blackwood's, other than arguing he should be able to present evidence of Blackwood's probation status and pointing out the different charges leveled against them. Since the evidence was inadmissible, however, antagonism is not shown by its preclusion; the evidence also does not constitute exonerating testimony, as Thomson claims. Severance also was not required merely because Thomson and Blackwood were charged with different crimes, since they were charged jointly on two of them and the counts on which they were charged separately stemmed from the evidence found during the same search. Where two defendants are charged jointly on at least one

23.

count, the fact that defendants are charged separately on other counts "'does not render the joinder improper or deprive the court of discretion to deny a motion for severance since there is a joint charge as to one of the crimes and a common element of substantial importance in the commission of all of them.'" (*People v. Pike* (1962) 58 Cal.2d 70, 84-85.)

Thomson contends permitting testimony that the search was lawful created antagonistic defenses because it prejudicially associated him with Blackwood. We have already explained that merely telling the jury the search was lawful did not lead to the inference that the officers were there because of some wrongdoing on Thomson's part. Similarly, it did not lead to the inference the officers were there due to Blackwood's criminal history. Thomson's claim that the exclusion of the probation search evidence allowed the jury to find him guilty based on his association with Blackwood fails, as the evidence was not improperly excluded. There was no danger that the jury would convict Thomson based on his relationship with Blackwood rather than on the evidence separately implicating Thomson. (*People v. Letner* (2010) 50 Cal.4th 99, 152 ["A prejudicial association justifying severance will involve circumstances in which the evidence regarding one defendant might make it likely the jury would convict that defendant of the charges and, further, more likely find a codefendant guilty based upon the relationship between the two rather than upon the evidence separately implicating the codefendant.").]

Finally, antagonistic defenses do not compel severance where there exists sufficient independent evidence against the moving defendant. (*People v. Avila* (2006) 38 Cal.4th 491, 575-576.) Here, the prosecution presented ample independent evidence of Thomson's guilt, which showed that he shared with Blackwood the bedroom where the methamphetamine was found under the bed near a bag of his clothes and shoes, he had wad of $20 bills in his pocket, and he confessed to police that the drugs were his and he had intended to sell them.

In sum, there was no abuse of discretion in denial of the severance motions.

When a trial court's denial of a severance motion was proper when made, "'we may reverse a judgment only on a showing that joinder "'resulted in "gross unfairness" amounting to a denial of due process.'"'" (*People v. Souza* (2012) 54 Cal.4th 90, 109.) In making this determination, we look to the evidence actually introduced at trial. (*People v. Bean* (1988) 46 Cal.3d 919, 940.)

Thomson contends he was deprived of a fair trial because the trial court erroneously refused to permit him to introduce evidence of Blackwood's probation status and prior criminal conduct as substantive evidence of Blackwood's guilt. But as we have already explained, the evidence was inadmissible in this trial. The evidence properly presented against Thomson showed he possessed the methamphetamine found in the potato chip can under the bed for the purposes of sale, as well as the hydrocodone and syringe, as the can was found in the bedroom he shared with Blackwood near his clothes and shoes, he had a wad of $20 bills in his pocket, and he confessed to the deputies that drugs and syringe in the can were his and he intended to sell the drugs.

B. The *Pitchess* Hearing

Before trial, Thomson moved for discovery of the personnel records of Kern County Sheriff Deputies Patrick and Nance under the authority of section 1043 and *Pitchess*. Thomson sought to determine if anyone had filed complaints against the deputies relating to, inter alia, dishonesty and false police reports. The People filed a written response to the motion in which it conceded Thomson had established good cause for a limited review of Patrick's personnel files for complaints of dishonesty, but argued Thomson had not shown good cause to review Nance's personnel files.

At the hearing on the motion, the trial court found there was a sufficient showing to review Patrick's file in an in camera *Pitchess* hearing with respect to evidence of dishonesty "related to false report writing in that nature." The court denied the motion with respect to Nance. Brad Brandon, the designated representative of the custodian of

records, appeared at the in camera hearing and brought Patrick's full and complete personnel file. The judge reviewed the file and, at the conclusion of the in camera, stated there was nothing to release to the defense and directed that the reporter's transcript of the in camera review hearing be sealed.

Thomson asks us to conduct an independent review of the documents the trial court examined in response to his *Pitchess* motion. By order dated August 15, 2012, we directed the superior court to augment the record relevant to the *Pitchess* motion. We further directed the superior court, in the event it did not keep copies of the files reviewed, to conduct further proceedings to prepare a settled statement and submit the statement, along with the files and hearing transcripts to this court under seal. The superior court subsequently filed with this court the sealed reporter's transcript of the *Pitchess* hearing, a sealed manila envelope containing the applicable file, and a settled statement.

The statutory scheme for *Pitchess* motions is contained in sections 1043 through 1047 and sections 832.5, 832.7 and 832.8. When a defendant seeks discovery from a peace officer's personnel records, he or she must file a written motion that satisfies certain prerequisites and makes a preliminary showing of good cause. If the trial court determines that good cause has been established, the custodian of records brings to court all documents that are "'potentially relevant' to the defendant's motion." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) The trial court examines these documents in camera and, subject to certain limitations, discloses to the defendant "'such information [that] is relevant to the subject matter involved in the pending litigation.'" (*Ibid*.) The ruling on a *Pitchess* motion is reviewed for an abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330 (*Hughes*).)

Having independently reviewed the transcript of the *Pitchess* proceeding and the records examined by the trial court and submitted under seal, we conclude that the trial court did not abuse its discretion in determining that none of the records were relevant to

the issues presented in this case.  Accordingly, we uphold the ruling on the *Pitchess* motion.  (*Prince, supra,* 40 Cal.4th at p. 1286; *Hughes, supra*, 27 Cal.4th at p. 330.)

II.  Blackwood's Appellate Issues

Blackwood contends insufficient evidence was presented at trial to prove the elements of section 11366, maintaining a place for the purpose of unlawfully selling, giving away, or using controlled substances.  "'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. D'Arcy* (2010) 48 Cal.4th 257, 293.)

The elements of the maintaining-a-place offense are that the defendant (a) opened or maintained a place (b) with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance.  (*People v. Hawkins* (2004) 124 Cal.App.4th 675, 680 (*Hawkins*); *People v. Horn* (1960) 187 Cal.App.2d 68, 73 (*Horn*); *People v. Holland* (1958) 158 Cal.App.2d 583, 588-589 (*Holland*).)  Evidence of a single instance of drug use or sales at the place, without circumstances supporting a reasonable inference that the place was used for the prohibited purposes continuously or repetitively, does not suffice to sustain a conviction.  (*Hawkins*, *supra*, at p. 682; *People v. Shoals* (1992) 8 Cal.App.4th 475, 491-492 (*Shoals*); *Horn*, *supra*, at pp. 73-74; *Holland*, *supra*, at pp. 588-589.)

Blackwood asserts there is no evidence she "even knew of co-defendant Thomson's possession of the methamphetamine hidden in the [potato chip] can with the intent to sell it."  She further argues "the evidence utterly fails to establish any continuous or repetitive sales or use activity in the house or room in question."  She explains that while there is "no question Thomson stashed and packaged illegal drugs in the house with the intent to sell them, the evidence fails to show [Thomson] or [Blackwood] sold or

intended to sell narcotics at that location for the few months they lived there." Consequently, Blackwood argues, the judgment must be reversed.

The Attorney General contends sufficient evidence supported Blackwood's conviction, as the jury reasonably could infer: (1) Blackwood maintained a place for the continued use of methamphetamine based on the air freshener cans with methamphetamine residue on them and Thomson's admission that he was a methamphetamine user; (2) Blackwood maintained the bedroom with knowledge of the sales activities occurring there based on the overt indicia of drug sales present in the room, namely the television that showed the home's front gate, the digital scale and the police scanner; and (3) Sandoval either used methamphetamine in the bedroom, or bought or sold methamphetamine there, as on the night of the search, she was in the bedroom with Blackwood, deputies later found Sandoval with Blackwood nearby, and at that time Sandoval carried a digital scale and both possessed and was under the influence of methamphetamine.

We agree with Blackwood. The statute can be violated by maintaining a place for either the sale of a controlled substance or its use, e.g. by providing a place for drug abusers to gather and share their experience. (*People v. Vera* (1999) 69 Cal.App.4th 1100, 1102 (*Vera*).) While there was evidence the bedroom was being used to package methamphetamine for sale, there was no evidence that sales were taking place from the bedroom. The presence of the digital scale showed that it had been used for dividing and measuring drugs for packaging, while the camera and police scanner showed attempts to avoid detection and protect the drugs from police or theft. None of these items show anything one way or the other about whether drug sales took place in the room. While the Attorney General would have us infer sales took place there because Sandoval was found later to both have possessed and used methamphetamine, to do so would be pure speculation. Even if a sale had occurred, a single instance of selling or giving away,

28.

absent other circumstances supporting a reasonable inference of continuous or repetitive sales or gifts, is insufficient. (*Holland*, *supra*, 158 Cal.App.2d at pp. 588-589.)

Neither is there sufficient evidence of continuous use of drugs in the bedroom. Although the presence of the three cans with methamphetamine residue on them leads to the reasonable inference that drugs were used in the room, there is no evidence from which the jury reasonably could find that drug use occurred on more than one occasion, or who used the drugs.

The Attorney General asserts that Thomson's admission that he is a methamphetamine user supports a finding of continuous use in the bedroom. But as Blackwood points out, the evidence that Thomson used drugs in his own bedroom is insufficient to show Blackwood maintained a place for drug use within the meaning of section 11366. "[S]ection 11366 does not apply to an individual's continuous or repeated use of controlled substances at home, absent evidence that the individual opened his or her home to others for the purpose of selling or giving away to them, or for the use by them of such substances." (*People v. Franco* (2009) 180 Cal.App.4th 713, 724-725; see also *People v. Vera* (1999) 69 Cal.App.4th 1100, 1102-1103 [explaining that section 11366 does not "cover repeated solo use at home"; instead, it requires "the provision of such locality to others."])

Here, the evidence showed that Thomson lived in the bedroom with Blackwood. The two lived there for about five months; according to Arias, "they moved out" at the beginning of May 2009. Thomson told police everything he owned was in the bedroom. While the verbal rental agreement was between Arias and Blackwood, who paid the rent, Thomson also was an occupant of the bedroom. The evidence that Thomson used drugs in his own bedroom is insufficient to show Blackwood maintained a place for drug use within the meaning of section 11366. The purpose of section 11366 is "to prohibit persons from maintaining a public nuisance, such as a Prohibition-era speakeasy or a modern crack house. The use of drugs by an individual in his or her own home does not

by itself give rise to the type of public nuisance the statute was designed to address." (*Franco*, *supra*, 180 Cal.App.4th at p. 723.) Thomson's use of drugs in his own home is not the type of public nuisance addressed by section 11366. Consequently, his use of drugs in the bedroom is not the type of activity for which Blackwood can be liable.

The Attorney General also asserts continuous use may be inferred from Sandoval's presence in the bedroom, since she was later found to be under the influence of methamphetamine. No evidence was presented, however, on how long the methamphetamine had been in her system from which a jury could infer she used it in the bedroom earlier that night. While there was evidence that Sandoval had been at the house on other occasions, the record is silent on what she was doing there.

The evidence of use and sales the Attorney General points to shows *at the most* that two theories are equally likely to be true: that the bedroom was used just for packaging drugs and personal use, or a sales operation was conducted there along with use of methamphetamine by people other than Thomson and Blackwood. This is not enough. The jury was instructed properly with CALCRIM No. 224: "Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilty, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

*Shoals* is instructive. There, a search of a defendant's motel room, which he shared with a woman, by four parole officers, revealed 21 small baggies of cocaine base, a pager and $533 in cash. (*Shoals, supra,* 8 Cal.App.4th at p. 481.) The appellate court found insufficient evidence supported the defendant's conviction for maintaining the motel room for purposes of selling cocaine base in that the evidence showed the motel

room was used as a bedroom and "a home for a woman, possibly a man, and children," "there was no evidence of people visiting the place in unusual numbers or at unusual times," there was "no evidence of people under the influence on or around the premises," "there was no evidence of lookouts or the use of passwords or codes to gain access," and "there was no drug paraphernalia or drug residue in the room." (*Id.* at p. 492.) While there was expert testimony that the number of bindles indicated possession for sale, the appellate court recognized the bindles were "extremely portable," and the "comings and goings of [the defendant] but not of customers support the inference that any selling to, giving away to, or using by others besides [the defendant] and [the woman occupant] took place elsewhere." (*Ibid.*)

The present case is similar. The evidence showed that Blackwood had been living in the bedroom for a couple of months with Thomson, that drugs had been packaged there, and that use occurred there on one occasion. Apart from this, there were no indicia of continuous or repeated acts of use, gift, or sale of drugs in the bedroom. For these reasons, we conclude Blackwood's conviction on count 4 was not supported by sufficient evidence and must be reversed.

Blackwood also raises three sentencing errors, namely that the trial court imposed an unauthorized criminal laboratory analysis fee under section 11372.5; she is entitled to additional presentence custody credit awards from her prior case number TF005367A; and she is entitled to 46 days of presentence conduct credit under new Penal Code section 4019. The Attorney General agrees with the first two contentions, but argues the new version of section 4019 does not apply to Blackwood. In light of our reversal of the maintaining-a-place conviction, however, these issues are moot.

**DISPOSITION**

Blackwood's conviction on count 4, maintaining a place for selling, giving away, or using a controlled substance is reversed. Blackwood's case is remanded for resentencing on case number TF005367A.

Thomson's judgment is affirmed.

_____

Gomes, Acting P.J.

WE CONCUR:


_____

Peña, J.


_____

Oakley, J.*

---

* Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.