Filed 10/15/24  P. v. Leo CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SCOTT LEO,<br><br>    Defendant and Appellant. | B319616<br>(Los Angeles County<br>Super. Ct. No. NA118413) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge.  Affirmed as Modified.

Robert A. Werth, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Scott Leo hosted drug-fueled parties at his home, where he and his guest(s) would primarily consume methamphetamine and GHB.[1] A jury convicted defendant of three drug-related crimes: maintaining a place to give away or furnish controlled substances (count 3) and furnishing GHB and methamphetamine to others (counts 4 & 5, respectively). On appeal, defendant contends the trial court committed various evidentiary errors as well as instructional error. He further contends the court improperly informed the jury about a victim advocate present in the courtroom. In sum, defendant argues that cumulative prejudice caused by these errors requires reversal. In addition, defendant asserts there was insufficient evidence to support count 3, and his sentence on that count must be stayed pursuant to Penal Code section 654. While his contentions largely fail, defendant's claim of sentencing error has merit. Therefore, we direct the superior court to modify the abstract of judgment to reflect the stay. In all other respects, the judgment is affirmed.

## FACTUAL BACKGROUND

On appeal, "we must view the evidence in the light most favorable to the verdict and presume the existence of each fact that a rational juror could have found proved by the evidence. [Citation.]" (*People v. Rundle* (2008) 43 Cal.4th 76, 139–140, fn. 30, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Ernesto Junco and defendant were friends and had known each other for three or four years. Junco and defendant exchanged multiple text messages for the purposes of using drugs and having sex at defendant's

---

[1] GHB is known as a "date rape" drug.

2

house.  During one conversation, Junco wanted to come over to defendant's house, but defendant did not respond because he was with another individual using GHB.

Dustin Thompson met Zachary Kennedy approximately 10 years prior to trial.  Thompson described Kennedy as his best friend.  Thompson testified about drug culture and related terms.  He explained methamphetamine had many nicknames including, "T," "Tina," and "Crystal," while GHB was called "G."  He explained that "admin" referred to someone who could inject drugs intravenously with a needle.  In addition, "slamming" referred to taking drugs with a needle.  Based on his experience, Thompson stated that GHB and methamphetamine were usually taken together in the course of partying.  He also described a "host" as someone who invites people over to their house, and the host was "usually providing the drugs."  "Favs" referred to the drugs to be used at the party, like a party favor.  Thompson explained one could ingest methamphetamine in various ways but one drank GHB.

On October 8, 2017, Thompson drove Kennedy to defendant's house for a party.  Kennedy told Thompson he was bringing GHB and syringes.  Thompson knew that Kennedy used drugs, specifically methamphetamine and GHB.  Both of them, as well as other individuals, went to the party at defendant's house to do drugs and have sex.  Upon entering the party, Thompson saw people sitting around the living room "doing drugs."  Thompson observed needles filled with methamphetamine that were "ready to go."  He saw several people smoking and slamming methamphetamine.  Thompson also witnessed Kennedy inject others with the syringes he brought to the party.  Both he and Kennedy used methamphetamine and GHB.  While Kennedy left the party, Thompson stayed.  In the basement, Thompson observed people having sex and slamming and smoking methamphetamine.

Police officers arrived at defendant's house in response to a caller (falsely) claiming a rape occurred at that location. The officers soon discovered methamphetamine was being consumed because there were needles and drugs in the living room area. One officer told them to "cut that out."

On October 22, 2017, Kennedy went back to defendant's house. He ingested methamphetamine and GHB. That evening, defendant texted his friend Junco that he found Kennedy in the bathtub "in a G-hole." A G-hole is a state of unconsciousness caused by excessive use of GHB. Defendant asked if Junco could come by to help remove Kennedy as he could not do it himself. Junco was unable to go to defendant's house. Junco had previously experienced a "G-hole", and while it was frightening, he recovered. Junco told defendant that Kennedy just needed to relax.

At a later date, law enforcement executed a search warrant for defendant's house and uncovered Kennedy's body, which was buried in the backyard. Neither the cause of death nor the exact circumstances surrounding his death are contained in the record. However, defendant had cut off Kennedy's feet postmortem to fit his body in a container before burying it.[2] In addition, methamphetamine and GHB were detected in Kennedy's system. Law enforcement also observed drugs and drug paraphernalia in defendant's house. In one bedroom, there was a clear bag with an off-white crystal substance in it, later identified as methamphetamine, as well as a red straw. In another bedroom, there was a "shot glass" with a powdery, off-white substance resembling methamphetamine. There was also a small bag of methamphetamine and next to it was a glass pipe, which is typically used to smoke

---

[2]    Defendant was not tried for any crime related to Kennedy's death or the burying of his body.

4

methamphetamine. In the detached garage, there was duct tape, a bag of rocks, plastic bins, and "digging tools."

Law enforcement seized defendant's cell phone, which revealed multiple communications with unidentified individuals discussing getting together for sex and drugs. Some, not all, of the text messages were as follows. A conversation between defendant and another individual, discussed getting together. Defendant suggested the two "get naked, high and go from there." Another message sent by defendant asked whether the individual was bringing anyone to a particular residence. The individual asked defendant if he had "favs." Defendant responded, "T and 420," which meant he had methamphetamine and marijuana. In another text conversation, defendant asked an individual if he had party favors. The individual responded that he had "T & G," which meant methamphetamine and GHB. In a different conversation, defendant stated he had some party favors to share, but was good on marijuana. Defendant then asked the individual to "bring some [drugs] if you have any." In another conversation, an individual asked defendant if he was "able to part with some of your goodies?" Goodies referred to drugs. Defendant responded, "I may have someone wanting to buy them." The individual responded, "Yea, I just want T enough for like maybe two or three boys really to get me through the day." In a February 18, 2018 text exchange, defendant invited an individual over to his house and indicated he would have methamphetamine and GHB. Defendant asked if he planned to "shoot up" or smoke the methamphetamine. The individual indicated that he would "just smoke."

Defendant's cell phone contained similar texts dating back to 2015. Some, not all, of the text messages are as follows. In one conversation, an individual said, "Do [yo]u need any more goods for your guests?" Defendant

5

responded that he "probably should," but that he did not have any cash. Defendant then said, "I'll have to wait. Will you let me know where you land." Goods (like goodies) referred to drugs. In another conservation, an individual asked defendant if he had any methamphetamine. In a different conversation, an individual asked defendant if he had "any more T," and then later thanked defendant "for getting it for me and providing all you did." Defendant responded, "It was my pleasure. Thank you for being so sweet, between the douche online last night [and] watching my back and stash." Stash referred to drugs. The individual replied, "Aww thanks. He was just worried about drugs. . . . It pissed me off that he asked you a second time to smoke what was left in the stem of the pipe." In another text exchange, defendant talked about his roommate who "was not okay with [defendant] inviting [people] over to have sex and use narcotics."

## PROCEDURAL HISTORY

A jury found Leo guilty of three drug-related charges in violation of the Health and Safety Code, as follows: maintaining a place for the purpose of giving away or using controlled substances (here, methamphetamine and GHB) between October 8, 2017 and May 3, 2018 (Health & Saf. Code, § 11366 [count 3]); furnishing GHB and methamphetamine to others on or about October 8, 2017, October 20, 2017, October 22, 2017, and/or February 18, 2018 (Health & Saf. Code, §§ 11352, subd. (a), 11379, subd. (a), respectively [counts 4 & 5]).[3] The jury also found four aggravating circumstances to be true (Cal. Rules of Court, rules 4.421(a)(1), (a)(3), (a)(4), and (a)(8)).[4] The

---

[3] The amended information only contains counts 3, 4, and 5.

[4] The following aggravating circumstances were alleged: the crimes involved acts disclosing a high degree of cruelty, viciousness or callousness

trial court sentenced Leo to six years and eight months in state prison, which consisted of the upper term of five years on count 4, and one-third the mid-term on counts 3 (eight months) and 5 (one year).

Leo timely filed a notice of appeal.

## DISCUSSSION

### I. *Evidentiary Rulings*

Defendant contends the trial court abused its discretion in excluding, on relevancy grounds, evidence establishing (1) Craig Sweitzer (not defendant) supplied Kennedy with GHB the night of his death, (2) Kennedy's drug history, and (3) an alternative explanation for why defendant buried Kennedy's body. He further contends the court abused its discretion in admitting evidence pertaining to the burial of Kennedy's body to establish consciousness of guilt. Lastly, defendant argues the court abused its discretion in admitting his 2015 electronic communications, which occurred outside the time period for the charged crimes (Oct. 8, 2017 to May 3, 2018).[5]

---

(Cal. Rules of Court, rule 4.421(a)(1)); the crimes involved a particularly vulnerable victim (Cal. Rules of Court, rule 4.421(a)(3)); the defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants (Cal. Rules of Court, rule 4.421(a)(4)); and the manner in which the crime was carried out indicated planning, sophistication, or professionalism (Cal. Rules of Court, rule 4.421(a)(8)). On appeal, defendant does not challenge the jury findings on the aggravated circumstances.

[5] Defendant argues that the exclusion of two witnesses' testimony (Dyanne Irwin and Johnny Peterson) violated his federal due process right to present a defense. This argument as to Peterson is forfeited based on defendant's failure to raise it in the trial court. (*People v. Partida* (2005) 37 Cal.4th 428, 435.) As to Irwin, the argument lacks merits. The witness's testimony would not provide evidence material to a claim of innocence. Defendant proffered that Irwin would provide an alternative theory for

7

Assuming without deciding the court's admission or exclusion of this evidence was erroneous, defendant's evidentiary challenges would still fail due to the absence of demonstrated prejudice. (*People v. Hill* (1998) 17 Cal.4th 800, 844 ["criminal trials are rarely perfect, and [the] court will not reverse a judgment absent a showing of a miscarriage of justice"].) To demonstrate prejudice sufficient for reversal on the ground of evidentiary error, the defendant must show a reasonable probability that absent the trial court's erroneous ruling, the result of the proceeding would have been different. (*People v. Alcala* (1992) 4 Cal.4th 742, 791 [evidentiary rulings reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 reasonable probability standard]; see also *People v. Lucas* (1995) 12 Cal.4th 415, 436.) Here, defendant made no such showing. (See Cal. Const., art. VI, § 13.)

In any event, defendant does not challenge the sufficiency of the evidence for furnishing GHB and methamphetamine convictions. As discussed below, there was more than sufficient evidence to support the remaining conviction for maintaining a place for the purpose of using controlled substances (specifically, methamphetamine and GHB). Thus, there is no reasonable probability that the evidentiary rulings would have altered the jury's verdict.

---

burying Kennedy's body (i.e., defendant would have lost his job if his employer learned of Kennedy's drug overdose). Defendant does not articulate nor can we conclude that this evidence would negate any element of the charged offenses. Defendant admits that the circumstances of Kennedy's death and subsequent burial is "not relevant to the listed charges."

II.    *Jury Instruction*

Defendant asserts the trial court committed prejudicial instructional error by failing to instruct the jury that Thompson was an accomplice in the furnishing GHB to others charge.  We reject defendant's claim of instructional error.

An accomplice is "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."  (Pen. Code, § 1111.)  For a witness to be chargeable with an "identical offense" for purposes of determining whether the witness is an accomplice, he "must be considered a principal."  (*People v. Lewis* (2001) 26 Cal.4th 334, 368.)  Principals are defined as "[a]ll persons concerned in the commission of a crime, whether . . . they directly commit the act constituting the offense, or aid and abet in its commission."  (Pen. Code, § 31.)  "An aider and abettor is one who acts with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense."  (*People v. Av*ila (2006) 38 Cal.4th 491, 564.)  Thus, "[a]n accomplice must have "'guilty knowledge and intent with regard to the commission of the crime.""'"  (*People v. Lewis, supra*, 26 Cal.4th at p. 369.)

"'If there is evidence from which the jury could find that a witness is an accomplice to the crime charged, the court must instruct the jury on accomplice testimony.'"  (*People v. Lewis, supra*, 26 Cal.4th at p. 369; see *Boyer* (2006) 38 Cal.4th 412, 466 ["The court need give such instructions [on accomplice testimony] only where there is substantial evidence that the witness was an accomplice"].)

Defendant contends Thompson was an accomplice in furnishing GHB to others because he drove Kennedy to defendant's party on October 8, 2017,

knowing that he was in possession of GHB. We conclude these facts are insufficient to rise to the level of an accomplice. There is no evidence Thompson planned to bring the GHB to defendant's party for the purpose of furnishing it to the guests. There is also no evidence Thompson advised or directed Kennedy to furnish GHB to others. As noted by the trial court in refusing the accomplice instruction, "all Dustin Thompson did was give [Kennedy] a ride over to [defendant]'s house." At trial, defense counsel also acknowledged there was no evidence that Thompson knew Kennedy's GHB would be distributed or used by others at defendant's party. Therefore, the court did not error in declining to instruct the jury that Thompson was an accomplice in furnishing GHB to others.

III.    *Victim's Advocate*

Defendant argues the trial court erred in using the term "victim advocate" in front of the jury twice, instead of a more neutral term such as "support person," during a break in Thompson's testimony. We conclude the argument is forfeited.

Prior to resuming Thompson's testimony, the following proceedings were held at sidebar. The district attorney noted Thompson was having a difficult time, "he was still visibly trembling and shaking." She informed the court and defense counsel that she asked a victim advocate to meet with Thompson during the lunch hour to check on him. The district attorney also stated she provided the victim advocate with money to get Thompson something to eat. After talking with the victim advocate, Thompson stated "he would feel better if [the victim advocate was in the court] with him."

Defense counsel responded it was "inappropriate to be buying witnesses lunch." He also said there was no need to have the victim advocate next to

10

Thompson on the witness stand. The district attorney offered to place the victim advocate in the front row, rather than next to the witness stand, while Thompson testifies. Defense counsel again raised the issue of the district attorney paying for Thompson's lunch and requested that the court inform the jury. The district attorney clarified that she did not buy him lunch but gave the victim advocate money to do so. Defense counsel agreed the district attorney "gave the victim advocate money to buy lunch." In the jury's presence, the court inquired about the name of the victim advocate and the district attorney responded, "Ms. Destiny Waters." The court informed Thompson that Ms. Waters would be sitting in the front row, and it was the court's understanding that the district attorney provided funds to Ms. Waters to purchase lunch for him. Thompson confirmed that was correct.

On appeal, defendant contends that the court's two references to Ms. Waters as a "victim advocate" communicated to the jury that Thompson was the victim of the charged offenses.[6] We agree with the Attorney General that the issue is forfeited based on defense counsel's failure to object below. (*People v. Myles* (2012) 53 Cal.4th 1181, 1214.) In response, defendant argues an objection would have been futile because "any attempt to correct the [court's] error would have exacerbated the issue." We disagree with defendant's conclusory assertion. Had defense counsel objected, the trial court could have corrected any alleged error by stating Ms. Waters was a "support person," thereby refuting any implication Thompson was a victim of the charged offenses.[7]

---

[6] Defendant does not challenge the presence of Ms. Waters in the courtroom.

[7] Defendant also contends that the cumulative impact of the evidentiary errors, instructional error, and the trial court's error in informing the jury of the victim advocate violated his right to a fair trial. As we have not found

11

IV.    *Sufficiency of the Evidence*

Defendant contends there is insufficient evidence to support his conviction for maintaining a place for the purpose of giving away or using controlled substances (Health & Saf. Code, § 11366).  He argues there is no evidence that he "used his house on a continuous and repeated basis to provide drugs to others."  We disagree.

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)  We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.)  In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  'This standard applies whether direct or circumstantial evidence is involved.' (*People v. Catlin* (2001) 26 Cal.4th 81, 139.)" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

Health and Safety Code section 11366 provides in pertinent part: "Every person who . . . maintains any place for the purpose of unlawfully . . . giving away, or using any controlled substance . . . shall be punished by imprisonment."  "'The proscribed "purpose" is one that contemplates a continuity of such unlawful usage; a single or isolated instance of the

_____

any error and deem the only arguable error (evidentiary rulings) insufficiently prejudicial to warrant reversal, we reject this contention.

12

forbidden conduct does not suffice.' [Citations.]" (*People v. Franco* (2009) 180 Cal.App.4th 713, 718; *People v. Vera* (1999) 69 Cal.App.4th 1100, 1102.) "[E]vidence of a single instance of drug use or sales at the house, without circumstances supporting a reasonable inference that the house was used for the prohibited purposes continuously or repetitively, does not suffice to sustain a conviction of the opening-or-maintaining offense." (*People v. Hawkins* (2004) 124 Cal.App.4th 675, 682.)

Here, the record is replete with evidence from which the jury could reasonably infer continuing unlawful use. Defendant engaged in multiple conversations with various unidentified individuals inviting them to his house to have sex and consume narcotics, specifically methamphetamine and/or GHB. Law enforcement later found methamphetamine and drug paraphernalia at defendant's house. Thompson also testified that he and Kennedy attended a party defendant hosted at his house on October 8, 2017 for the purpose of having sex and doing drugs. Thompson observed individuals smoking and slamming methamphetamine. He and Thompson partook in consuming methamphetamine as well as GHB that night. Moreover, Kennedy went to defendant's house on October 22, 2017 for the purpose of consuming narcotics. We note that defendant concedes in his opening brief (albeit in the context of challenging an evidentiary ruling) that there was substantial evidence to support this offense. Thus, we conclude there was sufficient evidence to support the jury's finding that defendant maintained a place with the intent to give away or allow others to use controlled substances, specifically methamphetamine and GHB, on a continuous or repeated basis. (See CALCRIM No. 2440.)

13

V.    *Sentencing Issue*

Defendant contends that his eight-month sentence for maintaining a place to give away or use controlled substances (methamphetamine and GHB) must be stayed because its duplicative of his punishment for the offenses of furnishing methamphetamine and GHB to others.  We agree.

Penal Code section 654, subdivision (a), states: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  Penal Code section 654 applies equally to the penal provisions of the Health and Safety Code.  (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.)

Subdivision (a) of Penal Code section 654 has been found to preclude "'multiple punishment for a single act or for a course of conduct comprising indivisible acts.  "Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor."  [Citations.]  "[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once."  [Citation.]' [Citation.]"  (*People v. Spirlin* (2000) 81 Cal.App.4th 119, 129; *People v. Latimer* (1993) 5 Cal.4th 1203, 1207–1208.)  However, if the defendant harbored "multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct.  [Citation.]" (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267–268; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021.)

Keeping in mind that the focus of Penal Code section 654 is whether the defendant acted pursuant to a single intent and objective (*People v. Avalos, supra*, 47 Cal.App.4th at p. 1583), we note that defendant was found guilty of violating Health and Safety Code section 11366, which criminalizes maintaining "any place for the purpose of unlawfully . . . giving away, or using" methamphetamine and GHB. "Corrupting and encouraging others by maintaining a place for drug abusers to gather and by furnishing drugs to them" is the "criminal objective" of a violation of Health and Safety Code section 11366. (*People v. Green* (1988) 200 Cal.App.3d 538, 544.)

Defendant's criminal objective for maintaining a place to give away or furnish controlled substances to others cannot be separated from the criminal objectives attendant to his violations of the statutes prohibiting furnishing methamphetamine and GHB to others. His objective to maintain a place where he would give away or furnish controlled substances to others was achieved by actually furnishing controlled substances to them. Having been punished for each count of furnishing methamphetamine and GHB to others, punishing defendant for maintaining a place to commit those crimes violates Penal Code section 654. Therefore, defendant's sentence as to maintaining a place to give away or use controlled substances (count 3) must be stayed.

//

//

//

//

//

//

15

## DISPOSITION

We direct the clerk of the superior court to amend the abstract of judgment to reflect that the sentence on count 3 is stayed pursuant to Penal Code section 654 and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


MORI, J.